475 So.2d 1277 (1985)
Mel HEIFETZ, d/b/a Key Wester Inn, Appellant,
v.
DEPARTMENT OF BUSINESS REGULATION, DIVISION OF ALCOHOLIC BEVERAGES & TOBACCO, Appellee.
No. AX-443.
District Court of Appeal of Florida, First District.
September 13, 1985.
*1278 Charles L. Curtis and Donna M. Poole, of Allsworth, Doumar, Cazel & Curtis, Fort Lauderdale, for appellant.
*1279 Harold F.X. Purnell, Gen. Counsel, Dept. of Business Regulation, Tallahassee, for appellee.
ZEHMER, Judge.
This administrative law case brings into sharper focus the respective roles and responsibilities of hearing officers and agencies involved in license revocation proceedings. Specifically, we review an order of the Department of Business Regulation, Division of Alcoholic Beverages & Tobacco (Division) revoking the beverage license held by appellant, Mel Heifetz, doing business as Key Wester Inn (Heifetz or appellant), on grounds that two employees working in the motel's lounge made drug sales to undercover agents on six occasions.
The Division's charges[1] were tried in a section 120.57 formal proceeding[2] before a hearing officer of the Division of Administrative Hearings. The recommended order of the hearing officer concluded, upon the facts found by him, that there was no evidence that Heifetz was involved in or knowingly condoned the drug activity, that the evidence failed to establish any negligence or lack of due diligence by Heifetz in supervising the licensed premises and employees, and that the evidence established that Heifetz took reasonable steps to screen employees and supervise the licensed premises. The recommended order concluded that Heifetz was not culpably responsible for illegal drug sales by the employees and recommended dismissal of the charges.
It is undisputed that the evidence failed to show Heifetz was involved in or knowingly condoned the illegal drug activity; therefore, the only basis for culpability would be negligent supervision or lack of diligence, in violation of section 561.29(1)(a), Florida Statutes (1983).[3]
*1280 The Division rejected certain findings of fact made in the recommended order, made additional findings of fact, and concluded that "given the persistent and practiced manner in which the drug transactions occurred, the licensee failed to exercise ordinary care in the maintenance of the licensed premises or the supervision of his employees and is guilty of the violations charged in the Notice to Show Cause, as amended" (R.131-132). Based on these altered findings of fact, the Division ordered the license revoked.
Appellant raises three points on appeal. First, he complains that in substituting findings of fact the Division did not comply with section 120.57(1)(b)9, Florida Statutes (1983), and that the Division's substituted findings of fact and conclusions of law are not supported by competent, substantial evidence and do not comport with the essential requirements of law. Appellant next complains that section 120.60(7), Florida Statutes (1983), regarding emergency suspension of licenses, is unconstitutional on its face and as applied in this case. Finally, he argues that the Division failed to comply with the requirements of the Administrative Procedure Act in the issuance of the emergency suspension order of appellant's license. Finding substantial merit in appellant's first point, we reverse. In view of this disposition, we find it unnecessary to reach the other two points.
Briefly stated, the evidence presented to the hearing officer shows the following facts as found by him. Appellant is owner of the Key Wester Inn in Key West and holds a beverage license covering operation of a lounge located in the motel. On six different days between September 10, 1983, and September 28, 1983, Division undercover agents purchased illegal drugs from two lounge employees. Appellant was not present at the time of these transactions, but the lounge was being operated by managers hired by appellant. The various transactions generally took place in a surreptitious manner, with drugs and money being exchanged with an intent to conceal that drug transactions were being consummated. A significant amount of evidence was presented to the hearing officer regarding the manner in which the drug transactions occurred. Much of the evidence centered around the ability of various witnesses to the drug transactions to determine that a transaction was actually occurring.
After hearing all the evidence, the hearing officer made extensive findings of fact. Among other things, he found that the drug transactions were concealed or hidden from view and not readily observable to the witnesses to the events. Several of these findings of fact were rejected by the Division as not supported by the record, with the Division substituting its own findings that the various transactions were not secretive or concealed and that they were clearly observed by witnesses in the lounge.
Evidence was also presented to the hearing officer regarding whether the various managers of the lounge were aware of the illegal drug transactions. Particularly, there was testimony by investigating officers that the two employees who had sold the drugs had told the lounge managers of the drug sales. This evidence was objected to by appellant on the ground of hearsay, and the hearing officer reserved ruling on *1281 admissibility of the evidence. In his recommended order, the hearing officer indicated that this evidence was "of no probative value in light of the total lack of any direct evidence which would show knowledge on the part of those individuals and because of the contradictions between such statements and the very secretive manner in which all the sales were made" (R. 113). The hearing officer weighed the evidence and concluded that the lounge managers were unaware of the illegal drug activities. This finding of fact was rejected by the Division, however, with a substituted finding that the managers were aware of the illegal drug activity.
Finally, there was evidence regarding the various steps taken by appellant to make employees aware of the employer's policy against the use or sale of drugs and to check into the identity and background of prospective employees. The hearing officer made various findings indicating that appellant took substantial measures in these areas, but the Division rejected many of the findings as not supported by the record and substituted its own findings pointing out certain deficiencies in appellant's practices.
Upon complete review of the record, we hold that all relevant and material findings of fact made by the hearing officer are supported by competent, substantial evidence in the record and that the Division erred in rejecting those findings of fact and substituting its own findings on the issues presented.
Despite a multitude of cases repeatedly delineating the different responsibilities of hearing officers and agencies in deciding factual issues, we too often find ourselves reviewing final agency orders in which findings of fact made by a hearing officer are rejected because the agency's view of the evidence differs from the hearing officer's view, even though the record contains competent, substantial evidence to support the hearing officer's findings. So once again we find it necessary to explain the respective roles of hearing officers and agencies in section 120.57 proceedings.
Section 120.57(1)(b)9, Florida Statutes (1983), mandates that an agency accept the factual determinations of a hearing officer unless those findings of fact are not based upon "competent substantial evidence." A number of cases have defined the competent, substantial evidence standard. The seminal case is De Groot v. Sheffield, 95 So.2d 912 (Fla. 1957), in which the Florida Supreme Court described it as "such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred" or such evidence as is "sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached." 95 So.2d at 916. Since this oft-cited definition is somewhat broad and capable of diverse interpretations and applications, the following rules for agency review of proposed orders should help agencies understand and properly apply the accepted view of the competent, substantial evidence standard.
Factual issues susceptible of ordinary methods of proof that are not infused with policy considerations are the prerogative of the hearing officer as the finder of fact. McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977). It is the hearing officer's function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact based on competent, substantial evidence. State Beverage Department v. Ernal, Inc., 115 So.2d 566 (Fla. 3d DCA 1959). If, as is often the case, the evidence presented supports two inconsistent findings, it is the hearing officer's role to decide the issue one way or the other. The agency may not reject the hearing officer's finding unless there is no competent, substantial evidence from which the finding could reasonably be inferred. The agency is not authorized to weigh the evidence presented, judge credibility of witnesses, or otherwise interpret the evidence to fit its desired ultimate conclusion. We recognize the temptation for agencies, *1282 viewing the evidence as a whole, to change findings made by a hearing officer that the agency does not agree with. As an appellate court, we are sometimes faced with affirming lower tribunal rulings because they are supported by competent, substantial evidence even though, had we been the trier of fact, we might have reached an opposite conclusion. As we must, and do, resist this temptation because we are not the trier of fact, so too must an agency resist this temptation since it is not the trier of ordinary factual issues not requiring agency expertise.
In the present case, the Division, in support of its conclusion to revoke appellant's license, rejected various findings of fact made by the hearing officer. The rejected findings were all susceptible to ordinary methods of proof and were not infused with policy considerations. The Division could claim no special expertise in determining whether a drug transaction was open and notorious or concealed, whether certain individuals did or did not have knowledge of certain drug activity, or whether sufficient measures had been taken to properly supervise lounge employees. Although we must agree with the Division that some of its substituted findings of fact may be supported by drawing inferences from the evidence different from those of the hearing officer, we also find that the rejected findings of the hearing officer were based on inferences that were not legally impermissible. As primary finder of fact, the hearing officer weighed the evidence and inferences to be drawn therefrom, judged the believability of witnesses, and resolved the disputed factual issues before him. Since these findings are supported by the record, we must reverse the agency's order to the extent it substitutes its own findings of fact for those of the hearing officer.
The next issue is whether, under the facts as found by the hearing officer, the ultimate conclusion of the Division may nevertheless be sustained. The Division concluded that "given the persistent and practiced manner in which the drug transactions occurred, the licensee failed to exercise ordinary care in the maintenance of the licensed premises or the supervision of his employees." Characteristically, whether one is guilty of negligence is a question for the trier of fact. Although stated in terms of a conclusion of law in both the recommended order and the final order, negligent supervision and lack of diligence are essentially ultimate findings of fact clearly within the realm of the hearing officer's fact-finding discretion. See School Board of Leon County v. Hargis, 400 So.2d 103 (Fla. 1st DCA 1981); cf. Utilities, Inc. of Florida v. Public Service Commission, 420 So.2d 331 (Fla. 1st DCA 1982). The Division has shown no special expertise in determining whether a licensee has exercised ordinary care or due diligence in supervising his employees so as to prevent drug sales on the licensed premises. This issue is determinable by ordinary methods of proof, weighing the evidence and judging the credibility of witnesses. Likewise, there are no overriding agency policy considerations on this issue. Accordingly, the hearing officer had authority and discretion to reach the ultimate finding that appellant was not guilty of negligence, i.e., lack of ordinary care, and the Division could alter this finding only if it was not supported by competent, substantial evidence. Since the hearing officer's ultimate finding of no negligence was supported by competent, substantial evidence, we must reverse the final order revoking appellant's license.
In reaching its conclusion, the Division emphasized that the several drug transactions occurred in a "persistent and practiced manner." This phrase is taken from Pauline v. Lee, 147 So.2d 359, 364 (Fla. 2d DCA 1962). The Division apparently perceives this statement to be a rule of law requiring that whenever drug transactions occur in a persistent and practiced manner the licensee is to be conclusively presumed to have failed to exercise ordinary care. We disagree with this interpretation of Pauline. In Pauline the court stated that the persistent and practiced *1283 manner of the illegal activity proven in that case was sufficient "to permit a factual inference leading to the conclusion that such violations of law were either fostered, condoned or negligently overlooked by the licensee." 147 So.2d at 364. Accord Bach v. Florida State Board of Dentistry, 378 So.2d 34 (Fla. 1st DCA 1980). Factual inferences are to be drawn by the hearing officer as trier of fact. Golden Dolphin No. 2, Inc. v. Division of Alcoholic Beverages & Tobacco, 403 So.2d 1372 (Fla. 5th DCA 1981); cf. Lash, Inc. v. Department of Business Regulation, 411 So.2d 276 (Fla. 3d DCA 1982). In the instant case, the hearing officer properly considered not only the manner in which the drug transactions were accomplished, but also other evidence indicating that the licensee had not fostered, condoned, or negligently overlooked the drug transactions. In particular, he considered whether appellant had taken "reasonable precautions" to prevent illegal activity on the premises.[4]Trader Jon, Inc. v. State Beverage Department, 119 So.2d 735 (Fla. 1st DCA 1960). See Cohen v. Schott, 48 So.2d 154 (Fla. 1950). Although the recurring number of transactions legally permits an inference that appellant failed to exercise ordinary care, the hearing officer acted within his discretion in reaching a different inference in light of other competent, substantial evidence to the contrary.
The mere fact that the drug transactions were persistent or recurring does not, alone, require a finding, as a matter of law, that the licensee failed to exercise reasonable care or due diligence. In cases where license holders have been found negligent as a result of persistent and recurring illegal acts occurring on the premises, the hearing officer considered the evidence, weighed the potential conflicting inferences, and found the licensee negligent. E.g., Golden Dolphin No. 2, Inc. v. Division of Alcoholic Beverages and Tobacco, 403 So.2d 1372; Lash, Inc. v. Department of Business Regulation, 411 So.2d 276 (agency increased penalty but affirmed hearing officer's finding of negligence). We have not located any case such as this in which the hearing officer concluded that the licensee was not negligent, the agency rejected this finding and ordered the license revoked, and the agency's conclusion was affirmed on appeal.
Additionally, we point out that:
[I]n those instances where courts have sanctioned revocation by the DBR because of simple negligence on a licensee's part for failing to exercise due care in the supervision of agents or employees who engage in unlawful activity on the licensee's premises, the courts have found repeated and flagrant violations by the employees which allow an inference that said violations had been fostered, condoned, or negligently overlooked by the licensee.

Charlotte County Lodge v. Department of Business Regulation, 463 So.2d 1208, 1212 (Fla. 1st DCA 1985); accord Taylor v. State Beverage Department, 194 So.2d 321, 329 (Fla. 2d DCA 1967); Lash, Inc. v. Department of Business Regulation, 411 So.2d 276; Bach v. Florida State Board of Dentistry, 378 So.2d 34. "Flagrant," by definition, means "glaring, notorious, scandalous," or "flaming into notice." The Compact Edition of the Oxford English Dictionary, p. 1014 (Oxford University Press 1971). The evidence and the hearing officer's findings of fact do not support the conclusion that the drug activity in appellant's lounge was flagrant. The hearing officer was entitled to weigh the surreptitious nature of the transactions, i.e., lack of flagrancy, in determining that appellant was not negligent in supervising his employees.
The Division's final order is reversed with directions to dismiss the charges against appellant.
REVERSED.
MILLS and ERVIN, JJ., concur.
NOTES
[1] The charges contained in the notice to show cause alleged the following:

1. That you, Melvin Heifetz, d/b/a Key Wester Inn, licensed under the beverage laws, by and through your agent, servant or employee, Lori Ann Hart, did violate Florida Statute 561.29(1)(a) and Florida Statute 893.13(1)(a) by the felony sale and/or delivery of cocaine on the following occasions:
a. On or about September 10, 1983, sale of cocaine to Beverage Officers Delmonte and/or Oliva while on the licensed premises.
b. On or about September 15, 1983, sale of cocaine to Beverage Officer Delmonte while on the licensed premises.
c. On or about September 17, 1983, sale of cocaine to Beverage Officer Delmonte while on the licensed premises.
2. That you, Melvin Heifetz, d/b/a Key Wester Inn, licensed under the beverage laws, by and through your agent, servant or employee, Linda, did violate Florida Statute 561.29(1)(a) and Florida Statute 893.13(1)(a) by the felony sale and/or delivery of cocaine on the following occasions:
a. On or about September 16, 1983, sale of cocaine to Beverage Officer Oliva while on the licensed premises.
b. On or about September 22, 1983, sale of cocaine to Beverage Officer Oliva and/or Delmonte while on the licensed premises.
3. That you, Melvin Heifetz, d/b/a Key Wester Inn, licensed under the beverage laws, by and through your agent, servant or employee, Lori Ann Hart, did violate Florida Statute 561.29(1)(a) and 777.011 and/or 777.04 on or about September 22, 1983, by aiding, abetting and/or conspiring with your agent, servant or employee, Linda, to sell cocaine to Beverage Officer Oliva while on the licensed premises.
4. That you, Melvin Heifetz, d/b/a Key Wester Inn, licensed under the beverage laws, between September 10, 1983, and the date of service of this Notice to Show Cause have maintained the licensed premises as a place resorted to by persons using controlled substances in violation of Chapter 893, F.S. or for the purpose of using said substances or which is used for keeping or selling the same in violation of Chapter 893, F.S. and Florida Statute 893.13(2)(a)5. and Florida Statute 561.29(1)(a).
5. That you, Melvin Heifetz, d/b/a Key Wester Inn, licensed under the beverage laws, between September 10, 1983 and the date of service of this Notice to Show Cause have maintained a public nuisance on your licensed premises, to wit: a place or building which is visited to by persons for the purpose of unlawfully using, keeping, selling, and/or delivering controlled substances in violation of Chapter 893, F.S., the same being in violation of:
a. Florida Statute 823.10 and Florida Statute 561.29(1)(c);
b. Florida Statute 823.01 and Florida Statute 561.29(1)(a).
[2] § 120.57, Fla. Stat. (1983).
[3] Section 561.29(1)(a), provides:

(1) The division is given full power and authority to revoke or suspend the license of any person holding a license under the Beverage Law, when it is determined or found by the division upon sufficient cause appearing of:
(a) Violation by the licensee or his or its agents, officers, servants, or employees, on the licensed premises, or elsewhere while in the scope of employment, of any of the laws of this state or of the United States, or violation of any municipal or county regulation in regard to the hours of sale, service, or consumption of alcoholic beverages, or engaging in or permitting disorderly conduct on the licensed premises, or permitting another on the licensed premises to violate any of the laws of this state or of the United States; except that whether or not the licensee or his or its agents, officers, servants, or employees have been convicted in any criminal court of any violation as set forth in this paragraph shall not be considered in proceedings before the division for suspension or revocation of a license except as permitted by chapter 92 or the rules of evidence.
[4] Such evidence included the hiring of an off-duty policeman to be present in the lounge to prevent illegal conduct and the giving of instructions to the managers, as well as the employees, regarding the prevention of drug sales.