530 So.2d 1019 (1988)
Clifford BERRY and Betty Berry, Appellants/Cross Appellees,
v.
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee/Cross Appellant.
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL REGULATION, Petitioner,
v.
Clifford BERRY and Betty Berry, Respondents.
Nos. 87-0209, 87-0350.
District Court of Appeal of Florida, Fourth District.
August 31, 1988.
Rehearing Denied October 4, 1988.
John T. David of Law Offices of John T. David, P.A., Margate, for Clifford and Betty Berry.
David A. Crowley, Asst. Gen. Counsel, Tallahassee, for State of Fla., Dept. of Environmental Regulation.
WARNER, MARTHA C., Associate Judge.
The property owners have filed this appeal from a final administrative order of the Department of Environmental Regulation denying their request for a permit to dredge and fill certain property in Port Everglades, Florida. The Department of Environmental Regulation has also filed a cross appeal from the order of the Division of Administrative Hearing officer declining a remand of this case to take additional evidence.
The property which is the subject matter of this dredge and fill permit consists of *1020 approximately eight acres. The site, originally agricultural property, included a manmade lake or a borrow pit created approximately twenty years ago. The lake has no direct relationship to the natural hydrological system of the area. This parcel has been referred to throughout the proceedings as the Southern Berry permitting site. To the north of the subject parcel is a parcel of land which is being used for oil reclamation operations. This site, known as the northern site, was operated by a corporation owned by the appellant under a lease from Amoco Oil Corporation. Both parcels are situated in the Port Everglades area which has become highly industrialized, containing many oil company tank farms and a Florida Power and Light plant.
In 1982 the Berrys, appellants herein, filed for a dredge and fill permit with the Department of Environmental Regulation (the DER), respondents below. The Berrys requested permission to clear and fill wetlands along the lake in Port Everglades, Florida, in order to construct mini warehouses. The permit was denied on the grounds that the proposed project was reasonably expected to violate a number of water quality criteria.
Several months later the DER received a second application from the Berrys on the same location. The DER was aware of soil and surface water contamination which existed on the northern property. Because of this, the DER conducted a limited investigation as to potential contamination on the southern site. Samples were taken of both water and soil on the southern site together with other samples from surrounding sites and from a discharge ditch which leads away from the southern site. The sample taken from this discharge ditch was located approximately 1200 feet from the permitting site. This ditch empties into the intracoastal waterway. Based upon the tests taken on both the northern site and the southern site and the samples at other adjacent areas, the DER was concerned that the proposed dredging on the southern site would alter the groundwater flow and cause additional contamination to the water supply. There were substantial levels of arsenic and hazardous material revealed on the northern site, and toxic PCBs were also found in the discharge ditch leading away from the original site.
When the DER issued its amended intent to deny the dredge and fill permit, it raised water quality concerns that by reason of the proposed project the PCB contaminants in the discharge ditch may reach the estuarine system through increased flow down the ditch. In addition, the DER felt that digging a deeper lake on the property, which was called for in the Berrys' plans, would alter the groundwater hydrology and resuspend contaminants existing in the lake, also releasing such contaminants into the estuarial system. The amended intent to deny required the Berrys to submit to the DER further testing in mitigation to provide "reasonable assurances" required by section 403.918(1), Florida Statutes, that proposed activity on the southern site would not violate water quality standards. Rather than comply and submit further tests, the Berrys filed a request for an administrative hearing on the amended intent to deny which hearing was held in front of an administrative hearing officer in 1986.
After a three-day hearing, the hearing officer issued an extensive opinion. Her factual findings included an analysis of the expert testimony and evaluation of the experts' credentials. Based on the expert testimony, she concluded that (1) groundwater flow in the area was to the east, southeast; (2) that filling the lake on the permitting site will not affect groundwater flow or resuspend contaminants; (3) that the DER's expert even testified that so long as the lake was not dredged and was filled with clean sand, the proposed project should not affect the flow of groundwater; (4) that the contaminants found on the southern site are no threat to groundwater quality; and (5) that the proposed development would offer control of water discharge and filtration of pollutants which does not exist now. She accepted the Berrys' experts' opinions that no further tests are necessary to provide reasonable assurances that the project will not reduce water quality. The hearing officer also accepted *1021 the expert's opinion that because of the water controls and filtration provided in the plan, the project may be reasonably expected to enhance water quality.
Based upon these findings of fact, the administrative hearing officer recommended granting the permit upon the accomplishment of three mitigating factors, namely: (1) that the proposed development be accomplished without digging the lake deeper; (2) that all fill for the lake on the subject site be constituted of clean fill sand; (3) that petitioners provide a way to control the post-development and water flow down the ditch. The petitioners accepted all three conditions.
Upon review of the hearing officer's recommended order, the Secretary of the Florida Department of Environmental Regulation ordered a remand requesting that additional testimony of an expert from the DER be taken, even though this testimony had been excluded at the original hearing. The hearing officer refused to reopen the proceedings, and, based upon that rejection, the Secretary entered her final order and denied the permit, determining that the hearing officer's findings and conclusions were not supported by any competent substantial evidence. This conclusion was reached by a review of the transcript, the Secretary's review of the experts' opinion in light of their areas of expertise; and that sufficient testing was not presented to give the reasonable assurances required by the Department.
The key issue presented at the hearing as well as in this appeal is whether the evidence provided by the Berrys provided reasonable assurances that the project would not violate water quality standards. Again, as in Heifetz v. Department of Business Regulation, Division of Alcoholic Beverages & Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985), this appellate court is faced with reviewing a final agency order where findings of fact made by the hearing officer are rejected by the Secretary because the Secretary does not agree with them, although competent substantial evidence appears in the record to support those findings.
The Department contends here as it did before the hearing officer that the petitioners should have conducted additional groundwater flow studies and testing to give reasonable assurances that water quality would not be affected. The experts for the Berrys testified that in their expert opinion, based upon a review of the project within their particular areas of expertise, such further testing was not necessary in order to form conclusions. Furthermore, one of the experts who testified on behalf of the DER testified that if the mitigating conditions placed upon it by the hearing officer were accomplished, no adverse affect on groundwater contamination would occur, regardless of groundwater flow direction. The hearing officer had the right to accept such testimony, and the Secretary cannot deny the permit based upon her view that such evidence is inconclusive.
The DER places great weight on the case of Booker Creek Preservation, Inc. v. Mobil Chemical Company, 481 So.2d 10 (Fla. 1st DCA 1985). They contend that Booker Creek stands for the proposition that when groundwater contamination is an issue and groundwater testing is inadequate or nonexistent, the applicant cannot as a matter of law provide reasonable assurances that the proposed project will not cause violations of established water quality standards. However, the facts of Booker Creek are so clearly distinguishable from the facts of the instant case, that such a broad holding cannot be extrapolated from that case to this. In Booker Creek, Mobil Oil sought to discharge polluted water and sand tailings into three huge waste storage ponds, covering 750 acres, 500 acres, and 400 acres, respectively. The concern was whether the polluted waters or tailings would seep through the pond and affect the groundwater in that area. Certain geologic features were found in one pond which might increase flow of the polluted waters into the groundwater system. However, Mobil had performed no tests on either the second pond or the tailing storage area to determine whether such features existed in these two areas. The court concluded that although an applicant need not perform *1022 every known test on every foot of his property, where the areas subject to pollution discharge were as large as in Booker Creek, each pond being almost two-thirds of a square mile in size, testing on only one such pond was insufficient as a matter of law to provide reasonable assurances as to the other two ponds that geologic features under those ponds would not cause a violation of water quality standards.
In the instant case, no such massive areas of land were involved nor was the permitted application a pollutant discharging application. What the petitioners' experts testified was that the proposed application would in fact enhance water quality standards by controlling runoff through the ditch where PCBs were found. Furthermore, the DER had done some testing, which revealed groundwater contamination in the subject property and the DER's own expert concluded that the contaminants found in the lake were anaerobic and encapsulated. Thus, filling of the lake would not tend to resuspend them in the water. Based on the testing done and their analysis of the project, the plaintiff's experts concluded that no further testing was necessary for them to reach their opinions.
This is not a case as in McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), where the ultimate facts are in essence opinions infused by policy considerations for which the permitting agency has special responsibility and to which this court should give greater weight. Despite the Department's arguments to the contrary, the issues here are factual and are susceptible of ordinary methods of proof. The question is simply the credibility of the witnesses' testimony and the weight to be given to it. See McDonald v. Department of Banking and Finance. Since the agency may reject the findings of the hearing officer only when there is no competent substantial evidence from which the finding could reasonably be inferred, Ferris v. Austin, 487 So.2d 1163 (Fla. 5th DCA), cause dismissed, 492 So.2d 1330 (Fla. 1986), it erred in denying the dredge and fill permit where such evidence existed.
On cross appeal, the Department claims that the hearing officer erred in refusing to accept an order of remand to accept further testimony from an expert on behalf of the DER. The hearing officer had originally excluded some of his testimony on the basis that he was not competent to give certain opinions with respect to the southern permitting site property. While this expert's testimony was not proffered into the record, the attorney for the DER stated his testimony would be to the effect that the absence of further testing submitted by the petitioner prevented any conclusion from being drawn concerning the possibility of groundwater contamination on the southern site from the northern site.
Assuming but not deciding for the purposes of this appeal that the Secretary has authority to remand a case where procedural errors of law occur in the presentation of the evidence, we are still compelled to affirm on the cross appeal because a sufficient proffer was not presented of the testimony. See Musachia v. Terry, 140 So.2d 605 (Fla. 3d DCA 1962). Furthermore, the Department's attorney informed the hearing officer that the information to be presented by Mr. Lane was that further studies are necessary in order to determine the groundwater flow direction. If that indeed was the extent of his testimony, such testimony would be merely cumulative of other testimony of witnesses called on behalf of the Department, who also maintained that site specific data was necessary in order to determine groundwater flow and contamination in the area. Thus, we determine that there was no departure from the essential requirements of law, and the hearing officer was not compelled to reopen the hearing to accept such testimony.
Reversed and remanded with directions to the Department to issue the permit in accordance with the recommended order of the hearing officer.
ANSTEAD and DELL, JJ., concur.