BASKIN, Judge
(dissenting).
E.V. seeks to have his name expunged from the abuse registry. The issue presented in this case is whether the administrative agency properly concluded that his name shall remain on the central abuse registry because he refused to arrange for the child’s care and supervision.
HRS refused E.V.’s request that his name be expunged from the central abuse *253 registry; E.V. asked for an administrative hearing pursuant to section 415.-504(4)(d)1.b., Florida Statutes (Supp.1990). Following the hearing, at which E.V. and HRS presented testimony, the hearing officer made the following findings of fact and conclusions of law:
FINDINGS OF FACT
1. Respondent, E.V., is the legal father of the male child, A.L.M., born September 30, 1990, to the natural mother C.M., who was incarcerated in the state corrections system at the time of the child’s birth.
2. Immediately after being released from the hospital, the child, A.L.M., was placed in shelter care by the Department.
[3.] At the time of the birth of the child, A.L.M., Respondent was also incarcerated in the state corrections system under a sentence which is scheduled to exceed the eighteenth birthday of the child. The child was placed in shelter care.
[4.] Shortly after the birth of the child, when requested by the Department to execute documents necessary to place the child in the care of a responsible adult of his choosing, E.V. declined to sign the documents on the grounds that he did not believe that he was the natural father of the child.
CONCLUSIONS OF LAW
1. The Division of Administrative Hearings has jurisdiction over the subject matter of this proceeding, and the parties thereto, pursuant to subsections 120.57(1) and 415.504(4), Florida Statutes.
2. Section 415.503(3), Florida Statutes (1989) defines child abuse or neglect to mean harm or threatened harm to a child’s physical or mental health or welfare by acts or omissions of the parent or other person responsible for the child’s welfare.
3. “Harm” is defined in Section 415.-503(9), Florida Statutes (Supp.1990) as follows: “Harm” to a child’s health or welfare can occur when the parent or other person responsible for the child’s welfare:
(d) Abandons the child
(e) Fails to provide the child with supervision or guardianship by specific acts or omissions of a serious nature requiring the intervention of the department or the court.
(f) Fails to supply the child with adequate .food, clothing, shelter, or health care, although financially able to do so
[[Image here]]
4. If an alleged perpetrator requests amendment or expunction of a record and the Secretary of HRS refuses the request, the alleged perpetrator has the right to an administrative hearing. At such hearing, the Department must prove by a preponderance of evidence that the perpetrator committed the abuse or neglect. Subsection 415.504(4)(d)3., Florida Statutes (Supp.1990).
5. The evidence in this case is clear that E.V. was legally married to the natural mother at the time of the birth of the child, A.L.M., and although he was incarcerated at the time he declined to participate in making arrangements for the placement of the child (without the intervention of the Department). In fact, he alleges that he is not the biological father of the child and does not wish to participate in the child’s upbringing. However, no court judgment or decree relieved him of that obligation, and therefore, it can be stated that he has abandoned the child, under Section 415.-503(9)(d), Florida Statutes (Supp.1990).
6. However, E.V. is not guilty of failing to provide the basic necessities to A.L.M. during that same period because the evidence was clear that Respondent was incarcerated at the time of the child’s birth and there was no evidence to show that Respondent was “financially able to do so or ... offered financial or other means to do so_” Section 415.-503(9)(f), Florida Statutes (Supp.1990). Neither was there any evidence presented relating to the classification: “other threatened harm or threatened harm.”
*254 7. From the forgoing, it is concluded that the act or omissions or abandonment by E.V. was of such a serious nature so as to constitute neglect under the definition in the statute.
The hearing officer recommended that: 1) “no reference [be] made to E.V. as the perpetrator of neglect for ‘other threatened harm’ or for ‘inadequate shelter[;]' ” and 2) “the Abuse Registry can reflect that E.V. is the perpetrator of neglect for abandonment of the child.” The agency adopted the recommended order.
“ ‘Child abuse or neglect’ means harm or threatened harm ... by the acts or omissions of a parent_” (Emphasis supplied). § 415.503(3), Fla.Stat. (Supp.1990). As described in section 415.503(9)(d), Florida Statutes (Supp.1990), harm can occur when a child’s parent abandons the child. Applying this statutory scheme to the facts before us, I find the hearing officer correctly concluded that HRS had proven by a preponderance of the evidence that E.V. was not entitled to have his name expunged from the registry. E.V. refused to provide for his newborn child’s placement. E.V. told HRS’s representatives that he wished to have nothing to do with the newborn. Therefore, the hearing officer correctly concluded that E.V. committed neglect as defined in section 415.503(3), Florida Statutes (Supp.1990).
The majority has overlooked the standard for reversing the final order of an administrative agency; section 120.68(9), Florida Statutes (Supp.1990), requires reversal “[i]f the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action[.]” Here, the agency correctly interpreted all applicable statutes and its order should be affirmed. It is not within the province of this court to excuse E.V.’s actions on the ground that he genuinely believed he was not the child’s father. The agency correctly concluded that such contention was meritless: E.V. was married to the mother at the time of the child’s birth and no court judgment excused him from responsibility for the child. § 382.013(6)(a), Fla.Stat. (1989). See Knauer v. Barnett, 360 So.2d 399, 403 (Fla.1978) (“Due to the presumption that a child born in wedlock is the blood issue of the partners of such marriage, an individual who seeks to challenge the legitimacy of such a child has a strong, albeit rebuttable, presumption of legitimacy to overcome.”). “It is axiomatic that an agency’s construction of its governing statutes and rules will be upheld unless clearly erroneous.” Pershing Indus. v. Department of Banking, 591 So.2d 991, 993 (Fla. 1st DCA 1991). E.V. has not demonstrated reversible error and therefore is not entitled to reversal on that basis.
The court’s role in reviewing E.V.’s case is clear: “this court may not substitute its judgment for that of the agency ... as to the weight of the evidence. Agency determinations may be set aside only if the court finds that the agency’s action depends on a finding of fact not supported by competent evidence in the record.” Gershanik v. Department of Professional Regulation, 458 So.2d 302, 304 (Fla. 3d DCA 1984); § 120.-68(10), Fla.Stat. (Supp.1990). It is of no moment that the father is incarcerated or had a reasonable doubt about the infant’s parentage. This court may not select the facts on which it chooses to rely for the purpose of reversing the agency’s action: such discrimination constitutes impermissible reweighing of the evidence. The record demonstrates that the hearing officer did not base his recommendation on the father’s incarceration. The officer found that E.V.’s position concerning the child’s parentage was without merit. The hearing officer’s conclusions are supported by the evidence and the agency did not err in adopting them. Heifetz v. Department of Business Regulation, 475 So.2d 1277 (Fla. 1st DCA 1985).
Contrary to the majority’s assertion, section 415.505(1)(f)(3)[1] is inapplicable to this *255 case. That section pertains to a parent’s right to refuse to place the child in care offered by HRS. The majority overlooks the fact that E.V.’s conduct went beyond a refusal to consent to placement of the child in substitute care; E.V. also disavowed any responsibility for the child and refused to make any provisions on his own for the care of the child. E.V.’s refusal to provide for the child’s care and his stated desire to have nothing to do with the child’s upbringing provides the basis for finding that E.V. abandoned the child. E.V.’s refusal to consent to HRS care of the child engendered the dependency action, compare § 415.-505(1)(f)(3) with § 415.503(9)(d), Fla.Stat. (Supp.1990), but did not give rise to the denial of expungement.
The agency correctly interpreted all pertinent provisions of law and its findings are supported by the evidence. Accordingly, I am compelled to conclude that the agency properly determined that HRS demonstrated, by a preponderance of the evidence, that E.V. was not entitled to have his name expunged from the abuse registry. I would affirm the agency’s order.

. Section 415.505(1)(f)(3), Florida Statutes (Supp.1990), states:
If the department determines that a child requires immediate or long-term protection through [f]oster care, shelter care, or other substitute care to remove the child from his parents’ custody, such services shall first be offered for the voluntary acceptance of the *255 parents or other person responsible for the child’s welfare, who shall be informed of the right to refuse services as well as the responsibility of the department to protect the child regardless of the acceptance or refusal of services. If the services are refused or the department deems that the child’s need for protection so requires, the department shall take the child into protective custody or petition the court as provided in chapter 39.