ZEHMER, Chief Judge
(dissenting).
The lengthy recitation of the evidence in the majority opinion confirms my view that the findings of fact in the hearing officer’s recommended orders are supported by competent, substantial evidence, and Secretary Browner was bound by these findings of fact. § 120.57(l)(b)10, Fla.Stat. (1991); Heifetz v. Department of Business Regulation, 475 So.2d 1277 (Fla. 1st DCA 1985). It is clear from the final order that the Secretary disagreed with the hearing officer’s findings of fact and therefore modified certain facts to support her conclusion that the activity for which Florida Power sought a dredge and fill permit would result in adverse impacts contrary to the public interest. Yet, no authority permits the Secretary to make such changes in the facts when supported by competent, substantial evidence because of the provisions in subsection 120.57(l)(b)10.
Specifically, Secretary Browner’s final order concluded that there is a major difference between forested wetlands and herbaceous wetlands, and that Florida Power had destroyed forested wetlands by clear cutting, thereby leaving instead herbaceous wetlands. This result, she opines, amounts to an adverse impact contrary to the public interest, irrespective of whether the hearing officer’s recommended order found as a matter of fact, supported by competent, substantial evidence, that the altered conditions of the land did not factually result in adverse impacts. According to the majority opinion, the Secretary “determined that the public interest in the extent of the impact on the environment from this destruction of the forest was a policy matter for its determination and not a question of fact to be resolved by the hearing officer.” Agreeing, the majority affirms the final order on this rationale.
I dissent because I do not agree that this determination is purely a matter of public policy reserved for exclusive decision by the Secretary; rather, the determination must be based on matters of fact determined by the hearing officer on the evidence presented in accordance with section 408.918.
Section 403.918 requires two separate steps in determining whether the project covered by a dredge and fill application is not contrary to the public interest. Subsection 403.918(2), Florida Statutes (1989) (quoted in the majority opinion at p. 548, supra), provides that in determining whether the project for which the application has been filed is not contrary to the public interest, the Department shall “consider and balance” the following seven criteria:
1. Whether the project will adversely affect the public health, safety, or welfare or the property of others;
2. Whether the project will adversely affect the conservation of fish and wildlife, including endangered or threatened species, or their habitats;
3. Whether the project will adversely affect navigation or the flow of water or cause harmful erosion or shoaling;
4. Whether the project will adversely affect the fishing or recreational values or marine productivity in the vicinity of the project;
5. Whether the project will be of a temporary or permanent nature;
6. Whether the project will adversely affect or will enhance significant historical and archaeological resources under the provisions of s. 267.061; and
7. The current condition and relative value of functions being performed by areas affected by the proposed activity.
In accomplishing this balancing task, the Department should first determine the underlying facts that establish each of the seven *563 listed criteria. Second, if any of the criteria indicate factually that an adverse impact will result, the Department must balance these adverse impacts against the positive impacts shown by any other criteria and reach a conclusion as to whether the project as a whole “is not contrary to the public interest.” It is the function of the hearing officer to make determinations of predicate facts underlying the statutory criteria, as these are matters of existing or projected facts susceptible to ordinary methods of proof. Based on the facts so found by the hearing officer, assuming they are supported by competent, substantial evidence, it is the function of the Department or .the Secretary to weigh the statutory criteria established by the facts and conclude whether the project as a whole is against the public interest. Only the weighing of the criteria involves matters of policy left to the agency’s expertise and discretion.
The Secretary’s final order found adverse impacts under criteria 2, 5, and 7 based on policy reasons, thereby differing from the hearing officer’s findings of fact as to each of those criteria. Criterion 2 involves “[wjhether the project will adversely affect the conservation of fish and wildlife, including endangered or threatened species, or their habitats.” Criterion 5 involves “[wjhether the project will be of a temporary or permanent nature.” Criterion 7 involves “[t]he current condition and relative value of functions being performed by areas affected by the proposed activity.” Each of these criteria is governed by matters of fact on which the applicant and the Department generally present evidence in disputed dredge and fill permitting cases, usually in the form of proof of existing conditions, extensive scientific data, and relevant opinions by qualified experts at a formal subsection 120.57(1) hearing. As often as not, the experts are in disagreement, and it is the function of the hearing officer to judge the credibility and weight of all the evidence, including the contradictory expert opinions, and resolve disputed factual matters, usually by choosing to accept certain expert testimony while rejecting other expert testimony. In my view, that is precisely what the hearing officer did in the instant case. Yet, the Secretary has rejected the hearing officer’s findings of fact, not because they were unsupported by competent, substantial evidence, as provided in subsection 120.57(l)(b)(10), but because as a matter of policy the Secretary disagreed with the facts found by the hearing officer. Hence, the Secretary changed the facts under the guise of a policy ruling, asserting that the hearing officer essentially dismissed the “cumulative impact analysis” in her recommended order and failed to adequately consider the impact of this project (involving approximately 6 acres according to the Department) and other unnamed and unde-scribed projects expected to be located in the future within this large geographical area known as the Reedy Creek Basin (consisting of over 92,000 acres of upland and wetland habitats, of which some 31,448 acres are characterized as forested wetland). Additionally, the Secretary disagreed with certain policy determinations made by the hearing officer in the recommended order. Affirming the Secretary’s ruling, the majority opinion notes that, “Secretary Browner correctly rejected the finding that wetlands were not destroyed, on the ground that it was based on a policy determination which she also rejected, ‘that herbaceous wetlands are somehow environmentally equivalent to forested wetlands.’” [Emphasis added.] By characterizing this determination as one of policy rather than fact, the hearing officer’s findings can be ignored. This is akin to designating the Secretary as the sole deter-minator of how land shall be used without regard to the statutory limitations in chapter 403.
In my view, determining whether the herbaceous wetlands involved in this case are environmentally equivalent to forested wetlands, and whether the reduction of forested wetlands results in adverse impacts on the environment, depends on factual determinations by the hearing officer based on proof of existing and projected conditions and relevant expert opinion testimony; it is not a matter of pure policy to be left to the unrestrained discretion of the Secretary. Yet, characterizing this determination as one of policy rather than fact is key to sustaining the Secretary’s order in this case. Because I believe that the majority opinion has not *564 given appropriate recognition to the differing functions of the hearing officer and the Secretary in this case and has approved the Secretary’s misuse of her discretion as to policy, I respectfully dissent.