638 So.2d 574 (1994)
DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, Appellant,
v.
Patrick J. McCARTHY, Appellee.
No. 93-1534.
District Court of Appeal of Florida, First District.
June 1, 1994.
Rehearing Denied July 15, 1994.
Lisa S. Nelson, Asst. Gen. Counsel, Dept. of Business and Professional Regulation, for appellant.
Gerald B. Sternstein of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Tallahassee, for appellee.
KAHN, Judge.
The Department of Business and Professional Regulation (Department) appeals an order of the Board of Medicine (Board) which rejects several of the hearing officer's findings of fact and dismisses the charges filed against Dr. Patrick McCarthy. We find that the Board improperly weighed the evidence and reverse.
Dr. McCarthy was charged with violating section 458.331(1)(m) and (t), Florida Statutes,[1] in his delivery of C.H.'s child.[2] The record indicates that after the baby's head was delivered by forceps, Dr. McCarthy encountered severe shoulder dystocia. Shoulder dystocia occurs when the head is delivered *575 and the shoulder gets stuck under the symphysis bone. The shoulder can be freed when the physician performs a Wood's maneuver which involves rotating the shoulders. C.H.'s child was born with brachial plexus palsy, an injury to the nerves that extend from the neck into the arm. During delivery those nerves are stretched which results in decreased function or no function in the arm. In a deposition that was taken in a civil case arising from the delivery, Dr. McCarthy testified that the brachial plexus palsy occurred when he turned the baby's head to free the shoulders. At the hearing Dr. McCarthy testified that he turned the head and shoulders.
In the Recommended Order, the hearing officer rejected Dr. McCarthy's hearing testimony and found that "rotating the baby's head `so that the shoulders w[ould] follow it' was a departure from minimally acceptable practice." As a result, the hearing officer determined that rotating the baby's head violated section 458.331(1)(t). As to penalty, the officer recommended a five-year period of probation, a minimum of thirty hours of continuing medical education courses per year, and 250 hours of community service per year.
Dr. McCarthy filed exceptions to the Recommended Order challenging the hearing officer's acceptance of his deposition testimony over his hearing testimony. In these exceptions, Dr. McCarthy argued: 1) the hearing officer's findings were not supported by competent substantial evidence; 2) his testimony at hearing that he did not turn the baby's head is more credible than his deposition testimony that he rotated "the head so that the shoulders [would] follow it;" and 3) there was "no credible dereliction in the performance of the Woods maneuver by Dr. McCarthy." At a hearing the Board considered the exceptions, adopted them in part, and dismissed the charges.
The Board improperly rejected the hearing officer's findings of fact. "The agency is not authorized to weigh the evidence presented, judge credibility of witnesses, or otherwise interpret the evidence to fit its desired ultimate conclusion." Heifetz v. Department of Business Regulation, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985). The responsibility of weighing the evidence, resolving conflicts and judging credibility is the hearing officer's function. Id. An agency can only reject a hearing officer's finding of fact if it is not supported by competent substantial evidence. Id. In the instant case, the Board invaded the province of the hearing officer by reweighing the evidence.
As discussed above, conflicting evidence was presented as to whether Dr. McCarthy turned the baby's head during delivery. During the hearing Dr. McCarthy attempted to discredit his deposition testimony that he turned the baby's head by stating that he was confused and that "it was late in the afternoon and I'd been there for three hours." The record of the deposition suggests otherwise. The deposition commenced at 1:45 p.m. and concluded at 3:50 p.m. The admissions occurred at page 51 of 66 total pages. Before asking any questions, the lawyer instructed Dr. McCarthy to be sure he was not confused before responding. Dr. McCarthy agreed he would not attempt to answer if a question did not make sense or was confusing. Also, in describing the Wood's maneuver, Dr. McCarthy seemed to differentiate between the head and the shoulder: "you rotate the head around so the posterior shoulder will follow it." This statement made under oath contrasts with the Board's assumption that Dr. McCarthy turned the head and shoulders as one.
In the Final Order, the Board did not focus on whether the hearing officer's findings were supported by competent substantial evidence. See § 120.57(1)(b)10, Fla. Stat. (1993). Instead, the Board determined that its findings were supported by competent substantial evidence. The Board also acknowledged at the hearing that it was weighing the evidence. As to Dr. McCarthy's conflicting testimony, member Dr. Echevarria stated:
The deposition was not in agreement with what the Respondent said during the hearing. But, I think all of us, anybody should understand that if you twist that baby's neck to try to correct the dystocia, you're not going to just stretch the nerves *576 in the neck, you're going to wring his neck and you're going to kill him.
And I think that's probably what would have happened if he had really tried to rotate that body just by moving the head.
So, I think that there's reason to believe that what he stated in rotating the shoulders so that the head would come around is believable. And, perhaps in this area, the Hearing Officer didn't really quite appreciate that.
When member Dr. Cavallaro voiced his concern that the Board was starting to weigh the evidence, member Dr. Ashkar replied, "We're, in part, considering the Hearing Officer's thing. At the same time, we have to take note of that fact in the records." Subsequently Dr. Cavallaro recommended dismissal of the case "based on the fact that we had accepted those exceptions and changed the findings of fact, upon weighing the evidence here this morning." (e.s.) "The agency may not reject or modify the findings of fact ... unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence... ." § 120.57(1)(b)10, Fla. Stat. (1993).
We REVERSE the final order and REMAND for the Board to enter an order adopting the officer's recommended findings of fact. The Board may further consider the penalty, since the improper dismissal precluded such a consideration earlier.[3]
ERVIN and JOANOS, JJ., concur.
NOTES
[1] Section 458.331(1)(m) and (t), Florida Statutes (1991), provides in part:

(1) The following acts shall constitute grounds for which the disciplinary actions specified in subsection (2) may be taken:
.....
(m) Failing to keep written medical records justifying the course of treatment of the patient, including, but not limited to, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations.
.....
(t) Gross or repeated malpractice or the failure to practice medicine with that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances.
[2] This case was consolidated with another complaint alleging violations in the delivery of another child which is not an issue in this appeal. The hearing officer determined that the Department did not prove by clear and convincing evidence that any violations occurred in the second case and the Board adopted this determination.
[3] "The agency may accept the recommended penalty in a recommended order, but may not reduce or increase it without a review of the complete record and without stating with particularity its reasons therefor in the order, by citing to the record in justifying the action." § 120.57(1)(b)10, Fla. Stat. (1993).