667 So.2d 977 (1996)
Vernice L. BROWN, Appellant,
v.
CRIMINAL JUSTICE STANDARDS AND TRAINING COMMISSION, Appellee.
No. 94-3259.
District Court of Appeal of Florida, Fourth District.
February 14, 1996.
W. George Allen of Law Offices of W. George Allen, Fort Lauderdale, for appellant.
D. David Sessions, Assistant General Counsel, Tallahassee, for appellee.
WARNER, Judge.
The appellant challenges a final order of the Criminal Justice Standards and Training Commission ("Commission") revoking his criminal justice certification for testing positive for cocaine metabolites in a drug test. The Commission overruled the Hearing Officer's recommendation that the administrative complaint for revocation be dismissed based upon the Hearing Officer's conclusion that the Petitioner had failed to establish by clear and convincing evidence that the appellant had possessed cocaine. Because we find that the Commission improperly reweighed the facts, we reverse.
The Hearing Officer made the following findings of fact relevant to this appeal:
5. In accordance with a collective bargaining agreement, the Police Benevolent Association, as the bargaining unit for its members, agreed to random drug testing for all police officers employed by the City of Pompano Beach Police Department.
6. Pursuant to that agreement, Respondent was requested to, and agreed to submit a urine sample for testing on September 24, 1992.
7. In order to coordinate the testing, the City of Pompano Beach had contracted with a private company, Worker's Compensation Medical Center (WCMC), which was to conduct the collection of urine samples for testing purposes. On the testing dates selected, WCMC employees set up collection facilities at the police station.
8. Ms. Bobkier, a WCMC employee with four and a half years experience, was *978 responsible for collecting the urine sample from Respondent. According to Ms. Bobkier, employees from WCMC set up tables at the police station during the hours of 6:00 a.m. until 6:00 p.m. on September 24, 1992.
9. On that date, Respondent presented for testing, completed the paperwork to accompany the sample, went into the bathroom designated for use, and returned a sample to the collection table. This sample was identified as D0482663-5.
10. As she did with all samples collected that date, Ms. Bobkier then placed the sample into a holding cooler until it was transferred back to the WCMC office. Before transferring the samples back to the office, they were cataloged and inventoried.
11. Once back at WCMC, a courier from the testing center, National Health Laboratories (NHL) picked up the samples at approximately 7:15 p.m. on the evening of September 24, 1992.
12. The courier presumably took the samples to NHL where they were given ascension [sic] numbers by a NHL employee. Neither the courier nor the "ascension" [sic] employee testified at the hearing.
13. The ascension [sic] number assigned to sample D0482663-5 was XXXXXXX-X.
14. According to Dr. Donald R. Stalons, the director of NHL, testing on ascension [sic] sample no. 3303217-5 was performed on September 24, 1992 at approximately 2:45 p.m.
15. NHL is a clinical laboratory fully licensed by the State of Florida and the federal government and is authorized to perform forensic toxicological testing.
16. According to the test results for ascension [sic] sample no. 3303217-5, such sample was positive for cocaine metabolite.
17. The "ascension number" [sic] referred to above was the control number assigned to the sample for testing purposes. The sample retained that number throughout the testing process.
Based on these findings, the officer made the following relevant conclusions, which were designated conclusions of law:
22. The Petitioner bears the burden of proof in this matter to establish, by clear and convincing evidence, that the Respondent has failed to meet the foregoing standard. The administrative complaint is the framework for such alleged failure. In this case, the Petitioner alleged that Respondent had been in actual or constructive possession of cocaine. Petitioner failed to prove such allegation.
23. Considering only Petitioner's witnesses, the evidence failed to establish that Respondent's urine sample tested positive for cocaine. According to Ms. Bobkier, the sample was taken during the day of September 24, 1992, then transported by courier to the testing location that evening. According to the testing center's director, the sample purported to be Respondent's was tested during the afternoon on September 24, 1992. This discrepancy has not been explained. Obviously, if Ms. Bobkier's account of the day's events was accurate, the sample that was tested was not Respondent's. Petitioner must establish the proper evidentiary trail to connect Respondent to the sample that tested positive for cocaine metabolite.
The Petitioner filed exceptions to the Hearing Officer's recommendation that the administrative complaint be dismissed. In the exceptions, the Petitioner recited the above evidence and then detailed further evidence which appeared in the record. Petitioner then concluded that "[t]he recommended order clearly indicates that the only obstacle to a finding that Respondent's urine tested positive for cocaine is the discrepancy concerning the time the sample was tested and/or the time that the sample was transported from WCMC to NHL." Relying on Southern Bakeries, Inc. v. Florida Unemployment Appeals Comm'n, 545 So.2d 898 (Fla. 2d DCA *979 1989), the Petitioner requested the Commission to reject the Hearing Officer's recommendations and "to adopt the findings of fact and conclusions of law as set forth in the administrative complaint with an additional finding of fact that the evidence presented at hearing did establish that the Respondent's specimen tested positive for the presence of cocaine ... and an additional conclusion of law that a legally sufficient chain of custody was established...." The Commission agreed with the Petitioner, adopted and incorporated Petitioner's exceptions to the order, and rejected the conclusions of law made by the Hearing Officer recited above.
It is black letter law that an agency may not reweigh evidence submitted to an administrative hearing officer, resolve conflicts in the evidence, judge the credibility of witnesses or otherwise interpret the evidence anew. Heifetz v. Department of Business Regulation, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985). In the instant case, the Commission rejected the Hearing Officer's conclusion of law that the chain of custody was not proved because the time discrepancy called into question whether the sample tested was appellant's. While denominated a conclusion of law, this was a finding of fact which went to the weight the hearing officer gave to admitted testimony. In rejecting the Hearing Officer's conclusion, the Commission gave credence to and adopted evidence which was not discussed by the Hearing Officer and rejected the Hearing Officer's conclusion that the Petitioner had failed to prove its case by clear and convincing evidence. The Commission also gave credibility to the testimony of Ms. Bobkier, the individual who administered the test, when it is clear that the Hearing Officer did not. The Hearing Officer noted the time discrepancy, and concluded "Obviously, if Ms. Bobkier's account of the day's events was accurate, the sample that was tested was not Respondent's. Petitioner must establish the proper evidentiary trail to connect Respondent to the sample that tested positive for cocaine." Thus, the Hearing Officer was questioning Ms. Bobkier's credibility. Ms. Bobkier testified to more than the time that the sample was transported to the lab. Her testimony was crucial to establishing the method by which the urine samples were collected and labelled. If her testimony was not accurate, it would affect the evidentiary trail from the very initiation of the collection process. There was ample evidence at the hearing that the testing area was confused. Ms. Bobkier's testimony differed sharply from the appellant's as to how the sample was collected and labelled. In rejecting the Hearing Officer's conclusion, the Commission reweighed the credibility of Ms. Bobkier, something it is not allowed to do.
The Commission's reliance on Southern Bakeries, Inc. was misplaced. While that case is factually similar, the legal issue is different. In that case, the hearing officer had rejected the urine test on the sole basis that the Commission had failed to present the proper witnesses to authenticate the chain of custody or that the test was positive. Thus, the record showing that the test was positive for drugs was not admitted. The second district held that the business records exception to the hearsay evidence rule, section 90.803(6), Florida Statutes (1987), did not require the testimony of each person involved in the taking and analyzing of the sample in order to admit the report of the test results into evidence. In Southern Bakeries, the court dealt with the refusal to admit relevant evidence. In the instant case, we deal with the weight given by the Hearing Officer as trier of fact to admitted evidence. See Gavin v. Promo Brands USA, Inc., 578 So.2d 518, 519 (Fla. 4th DCA 1991).
Having found that the Commission improperly reweighed evidence contrary to Heifetz, we reverse and remand for entry of an order approving the Hearing Officer's report.
GLICKSTEIN and SHAHOOD, JJ., concur.