573 So.2d 1004 (1991)
Michelle GRESETH, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 89-3271.
District Court of Appeal of Florida, Fourth District.
January 30, 1991.
*1005 V. Donald Hilley of V. Donald Hilley, P.A., Palm Beach Gardens, for appellant.
Laurel E. Hopper, Dist. IX Legal Counsel, West Palm Beach, for appellee.
WARNER, Judge.
This is an appeal from an order by the Public Employees Relations Commission disciplining the appellant for negligence and willful violation of the rules of the Department of Health and Rehabilitative Services. We reverse.
The appellant was a protective investigator with HRS in Okeechobee, Florida. In March of 1989 HRS suspended Greseth for willful violation of rules, regulations, or policies of the department. The facts as found by the assigned hearing officer are found in the hearing officer's first recommended order. The hearing officer found that a medical neglect report on a child, L.Y., born underweight and hospitalized since birth, was received on January 4, 1989 by the Okeechobee HRS office and assigned to Greseth. The report's concern was that L.Y.'s mother had not come in for training on her care. L.Y. was hospitalized in Melbourne, but the mother lived in Okeechobee. Greseth, concerned because the child could not be medically neglected if hospitalized, asked for guidance from her supervisor who told her to handle the report "as is".
Greseth continued to handle previously assigned cases that day. The next day she attended mandatory staffing and was then called out to handle a sexual abuse case of a three year old. She attempted to contact L.Y.'s mother and located L.Y.'s grandmother who called while she was investigating a sexual abuse case. L.Y.'s grandmother told her that L.Y. would not be released from the hospital for a while and that when she was, the mother and baby would both live at the grandmother's. Greseth did not contact the hospital but relied on the grandmother's information.
For the remainder of the fifth of January, Greseth handled the sexual abuse case. At one point during the afternoon Greseth reported to her supervisor her conversation with L.Y.'s grandmother and asked for advice on how to proceed. The supervisor did not respond to her inquiry. Greseth spent the sixth and seventh (a Saturday) of January investigating several abuse reports, despite being ill. On Sunday the eighth she received another abuse report but was too ill to handle it and notified her supervisor.
From Monday January 9 to January 17 Greseth was on sick leave on doctor's orders. She spoke to her supervisor during this period although they did not discuss the L.Y. case. However, her supervisor did nothing to review the files in Greseth's office during her absence.
When she returned to work on January 17, she spent the entire day in court. The next day she learned that the baby L.Y. had actually been released from the hospital on January 6. The child later died, *1006 although the death was unrelated to any action or inaction on Greseth's part, or, for that matter, as a result of any neglect on the part of the mother.
The hearing officer also found that from December 23, 1988, to January 10, 1989, Greseth was the only protective investigator in a unit usually staffed by three investigators and that she had fourteen physical abuse and neglect cases to investigate between January 3-8. As a consequence she had to prioritize her cases. In the case of L.Y.'s report, Greseth relied on the initial report from the hospital, after it had been confirmed by L.Y.'s grandmother that the baby would not be released for at least two weeks. Therefore, from the information available to Greseth, the baby was not in immediate danger. Greseth intended to contact the hospital to verify the information on January 9, but became ill and was out of work for a week.
Department policies required either personal contact with L.Y. and her mother within twenty-four hours of the abuse report's receipt or to initiate an out of town inquiry if the parties were not in the vicinity. Greseth did not initiate an out of town inquiry. Department policy also required Greseth to contact the hospital and clarify the abuse report during her initial investigation. Greseth did this on January 18. It was these two rules which Greseth, an otherwise exemplary employee, was charged with violating.
The hearing officer concluded that Greseth did not willfully violate policies because she was assigned, with the Department's knowledge, to more cases than she could physically handle. Based upon the conversations with L.Y.'s grandmother that there was no immediate danger to L.Y., she classified it as a low priority case, concentrating her efforts on her other abuse cases. He also found no negligence in the way she prioritized and handled the case. Therefore he recommended sustaining her appeal from the HRS suspension.
While allegedly accepting the findings of fact made by the hearing officer, the Commission disagreed with his conclusions, finding that Greseth's case load was not too great to make a few phone calls, which it claimed would have satisfied regulations. In doing so it actually rejected the hearing officer's findings of non-negligence and no willful violations of policy. It then remanded for consideration of mitigating circumstances.
On remand the hearing officer recommended mitigation noting that the "Department's apparent policy of meting out serious discipline when a child dies, regardless of fault, is misplaced in the instant case." Noting Greseth's exemplary record, her excessive work load, and the complete lack of support by her supervisor to help her manage her case load, the hearing officer recommended mitigation to the lightest suspension. The commission largely rejected the hearing officer's recommendations but reduced the length of suspension, and Greseth appeals this order.
Greseth contends that the Commission violated the legal standard of review in rejecting the hearing officer's recommendations. We agree. An administrative agency may not reject the hearing officer's finding unless there is no competent, substantial evidence from which the finding could reasonably be inferred. "The agency is not authorized to weigh the evidence presented, judge credibility of witnesses, or otherwise interpret the evidence to fit its desired ultimate conclusion." Heifetz v. Dep't. of Bus. Reg., 475 So.2d 1277, 1281-1282 (Fla. 1st DCA 1985) ("We recognize the temptation for agencies, viewing the evidence as a whole, to change findings made by a hearing officer that the agency does not agree with."). In Heifetz, the First District noted that "[a]lthough stated in terms of a conclusion of law in both the recommended order and final order, negligent supervision and lack of diligence are essentially ultimate findings of fact clearly within the realm of the hearing officer's fact-finding discretion." Heifetz at 1282.
Furthermore, the agency's responsibility to determine if substantial evidence supports the hearing officer's conclusions cannot be avoided by labeling contrary findings as "conclusions of law." Substituted fact finding, thinly disguised as a *1007 conclusion of law, is wholly improper. South Fla. Water Mgmt. Dist. v. Caluwe, 459 So.2d 390 (Fla. 4th DCA 1984). "[A]n agency's reliance upon its own expertise to reverse a hearing officer's finding of no violation may not be sustained." Cohn v. Dep't. of Prof. Reg., 477 So.2d 1039, 1047 (Fla. 3d DCA 1985).
A similar case is Smith v. Dept. of Health & Rehabilitative Services, 555 So.2d 1254 (Fla. 3d DCA 1990). In Smith, HRS charged one of its program supervisors with negligent performance of her duties. The hearing officer, after hearing evidence, entered a proposed order which concluded that HRS did not have cause to discipline the employee for negligence. The commission accepted substantially all of the findings of fact of the hearing officer but disagreed with the officer's inference of non-negligence based on the facts. In particular, the commission inferred negligence because the employee did not notify her superiors of the problems she was having with placement of dependent children. Thereafter, the commission upheld her 20-day suspension and rejected the hearing officer's contrary conclusion. The Third District reversed finding that where reasonable people could differ as to whether the employee was negligent in her duties as charged, PERC was bound by the hearing officer's reasonable inference of non-negligence based on the conflicting inferences arising from the evidence.
We find that the same result follows here. The hearing officer found that Greseth had followed up as best she could given the amazing lack of cooperation of Greseth's superior, Greseth's heavy case load, and her unexpected illness. In fact, it is apparent that the hearing officer felt that the wrong department employee was being disciplined. His facts and conclusions from the facts were amply supported by the evidence produced, and PERC had no right to reject his findings. It was not operating in an area of special expertise, and therefore we need not defer to its special knowledge.
We therefore reverse and remand this cause to PERC to enter the hearing officer's recommended order vacating her suspension and granting her lost wages, attorney's fees, and expenses as a result of the proceedings below. Furthermore, we also grant attorney's fees to appellant in connection with these proceedings under section 120.57(1)(b)(10), Florida Statutes (1989). See Johnston v. Dept. of Prof. Reg., 456 So.2d 939 (Fla. 1st DCA 1984); University Community Hosp. v. Dept. of Health & Rehab. Serv., 492 So.2d 1339 (Fla. 2d DCA 1985); Purvis v. Dept. of Prof Reg., 461 So.2d 134 (Fla. 1st DCA 1984).
Reverse and remand.
POLEN, J., and SHAHOOD, GEORGE, Associate Judge, concur.