694 So.2d 856 (1997)
Jack Kenneth SCHRIMSHER, Jr., and Lewis W. Friend, as Co-Personal Representatives of the Estate of Jack Kenneth Schrimsher, deceased, Appellants/Cross-Appellees,
v.
SCHOOL BOARD OF PALM BEACH COUNTY, Florida and Dr. C. Monica Uhlhorn, Superintendent of Schools, Appellees/Cross-Appellants.
Nos. 94-1047 and 94-1487.
District Court of Appeal of Florida, Fourth District.
June 4, 1997.
*858 Neil B. Jagolinzer of Christiansen and Jacknin, and Marnie Ritchie Poncy of Nicoletti, Block, Duffy, Poncy, Kohn, P.A., West Palm Beach, for appellants/cross-appellees.
Howard I. Weiss, Donald Feldman and Bruce A. Harris of Weiss & Handler, P.A., Boca Raton, for appellees/cross-appellants.

ON MOTIONS FOR REHEARING, REHEARING EN BANC, AND FOR CERTIFICATION
SHAHOOD, Judge.
We deny appellants' motion for rehearing, rehearing en banc, and for certification, withdraw the opinion of this court filed on March 19, 1997 and substitute the following opinion.
This opinion addresses a consolidation of appeals arising out of an administrative hearing based on the petition of the School Board of Palm Beach County to demote one of its employees, Jack K. Schrimsher. Prior to the rendition of the final order below, Jack K. Schrimsher, Sr. died, and Jack K. Schrimsher, Jr. and Lewis W. Friend, as co-personal representatives of the estate of Jack K. Schrimsher, (collectively "appellants") were substituted as parties to the action. They appeal the final order of the School Board of Palm Beach County (Case No. 94-1047) rejecting the hearing officer's findings. The School Board cross appeals the order of the hearing officer denying its request for attorney's fees (Case No. 94-1487).
For the reasons discussed below, we affirm the final order of the School Board. With regard to attorney's fees, we remand for an evidentiary hearing limited only to determining the parties' (both Schrimsher and the School Board) entitlement, if any, to attorney's fees and costs pursuant to the parties' stipulation. We affirm without comment all remaining issues.

A. Factual Background
On December 23, 1991, the School Board of Palm Beach County ("the School Board") filed a Petition for Demotion against Jack K. Schrimsher, Sr. ("Schrimsher") seeking to have him demoted from his position as associate superintendent of planning and operations for the School Board to middle school principal, with a corresponding decrease in salary. The School Board alleged that Schrimsher was derelict in overseeing certain capital improvements and that his failure to effectively communicate with his subordinates impaired the school's maintenance program. The School Board later amended the petition to allege that Schrimsher (1)took no action with respect to overseeing and completing certain capital improvements; (2)inaccurately reported to the School Board the status of certain capital improvement projects and the relevant budgets; (3)failed to submit plans for the improvements to the Department of Education ("DOE"), as required by statute; (4)accepted gratuities from persons or entities competing to provide products or services to the School Board; (5)improperly evaluated certain employees; (6)exceeded the budget for new *859 school construction without notifying the School Board; and (7)encouraged the Growth Management division to acquire property from a personal friend. Schrimsher answered the petition denying all allegations; asserting that the School Board had waived the right to demote him since he had consistently received exceptional evaluations in the past; asserting that the School Board had engaged in the same allegedly inappropriate activities; asserting that the School Board had already conducted an investigation and found him to be competent; and counterpetitioning for attorney's fees.
On November 5, 1991, approximately one year prior to the formal administrative hearing, Monica Uhlhorn ("Uhlhorn"), the then incoming superintendent of schools, suspended Schrimsher with pay and notified him that she would be recommending to the School Board that he be demoted and reassigned as principal. The School Board accepted the superintendent's recommendation and suspended Schrimsher with pay. Six months later, Uhlhorn notified Schrimsher that the position of Associate Superintendent, Planning and Operations, was being abolished effective July 1, 1992.
The formal administrative hearing on the matter took place before a hearing officer on November 16-26, 1992. Prior to the hearing, the parties filed unilateral pre-hearing statements. The parties agreed and stipulated that the hearing officer would reserve jurisdiction to determine entitlement to fees and costs and the reasonable amount and that no evidence pertaining to fees and costs would be presented at the hearing. A total of thirty-three witnesses testified and the parties introduced approximately 180 exhibits.
On the last day of the hearing, the hearing officer directed the parties to file motions for attorney's fees and costs along with their proposed recommended orders so that he could make the required findings of fact in his recommended order. On April 20, 1993, under protest, the School Board filed its motion seeking attorney's fees and costs pursuant to section 120.57(1)(b)5, Florida Statutes, and "as a discovery sanction based on [Schrimsher's] denials to numerous requests for admissions." Schrimsher filed his proposed recommended order which set forth his claimed bases for attorney's fees, but did not request a hearing based on the stipulation.
The hearing officer filed his Recommended Order on July 23, 1993 finding that there was no evidence that Schrimsher was incompetent and recommending that Schrimsher be reinstated. The hearing officer also denied Schrimsher's request for attorney's fees and costs.
Thereafter, Schrimsher filed a motion to set a formal hearing to determine his entitlement to fees and costs and the amount of fees and costs. The School Board filed a response in opposition to Schrimsher's request for fees on the basis that the hearing officer had denied Schrimsher's request for fees and costs in the recommended order and that administrative law prohibits a rehearing. The hearing officer denied Schrimsher's motion to set a hearing, as well as his motion for rehearing asserting new bases for his entitlement to fees.
On July 31, 1993, the School Board filed a 32-page exception to the hearing officer's recommended order charging that the order was "legally deficient on the most cursory analysis" and that the hearing officer was not "sufficiently impartial." Specifically, the School Board complained that the hearing officer ignored the evidence and testimony and that he made the following erroneous findings of fact, summarized as follows:
1. that Schrimsher was not involved in the purchase of the warehouse property from [his friend] Bill Knight ("Knight"), and had no contact with Knight concerning the evaluation of his property;
2. that Schrimsher was not involved in contract negotiations for the Knight property and did not dictate the terms of the contract;
3. that Schrimsher's acceptance of gifts and vacations did not affect his business judgment or create the appearance of impropriety;
4. that only ten acres were required for a warehouse site, but all sixteen acres of the Knight property were purchased to overcome access problems;

*860 5. that Schrimsher was not associated with Mr. Bills at the time the West Bus Compound was acquired;
6. that Schrimsher was not usually involved in site selections;
7. that Schrimsher did not have the authority to influence decisions made in purchasing; therefore, his acceptance of gratuities did not create an appearance of impropriety.
8. that Schrimsher did not act incompetently and did not violate applicable standards in tracking and reporting the costs of capital improvements to the Summit facility;
9. that the School Board was aware of any deficiencies in the operation of Planning and Operations and did not act to correct them; and
10. that Schrimsher was not responsible for managing the bond program.
Schrimsher responded that the hearing officer's recommended order was unbiased and that the School Board's exceptions were frivolous. On August 25, 1993, more than ten days after the rendition of the recommended order, Schrimsher filed his exceptions to the recommended order citing as his only exception the hearing officer's determination that Schrimsher was not entitled to attorney's fees and costs. The School Board objected to Schrimsher's exceptions as untimely filed and without legal merit.
Schrimsher died on October 17, 1993, prior to the rendition of the School Board's final order. The School Board entered an order stating that Schrimsher's claim for reinstatement was extinguished by his death, but that his claims for back pay and attorney's fees remained. Pursuant to the School Board's order, appellants were substituted as parties in the action.
On March 24, 1994, the School Board entered its final order rejecting the hearing officer's findings of fact, conclusions of law and recommendations. The School Board found that Schrimsher was incompetent and not entitled to back pay, and denied his request for attorney's fees. They further found that Schrimsher's exceptions to the recommended order were untimely filed. Finally, the School Board remanded the case to the Division of Administrative Hearings for resolution of the issues of entitlement to and award of the School Board's reasonable attorney's fees as sanctions for Schrimsher's failure to admit certain requests for admissions. On remand, the hearing officer summarily denied the School Board's motion for attorney's fees and costs without holding an evidentiary hearing.

B. Standard of Review

School Board
We begin by noting the basic tenet of administrative law that an administrative agency may not reject a hearing officer's findings unless it is first determined that the findings were not based on competent, substantial evidence, or that the proceedings in which the findings were based did not comply with the essential requirements of law from which the findings could reasonably be inferred. Greseth v. Department of Health and Rehabilitative Servs., 573 So.2d 1004 (Fla. 4th DCA 1991); see also § 120.57(1)(j), Fla. Stat. (Supp.1996). "The agency is not authorized to weigh the evidence presented, judge credibility of witnesses, or otherwise interpret the evidence to fit its desired ultimate conclusion." Heifetz v. Department of Bus. Reg., Div. of Alcoholic Beverages and Tobacco, 475 So.2d 1277, 1281-82 (Fla. 1st DCA 1985). "The agency may accept the recommended penalty in a recommended order, but may not reduce or increase it without a review of the complete record and without stating with particularity its reasons therefor in the order, by citing to the record in justifying the action." § 120.57(1)(j), Fla. Stat. (Supp.1996).
Furthermore, the agency's responsibility to determine if substantial evidence supports the hearing officer's conclusions cannot be avoided by labeling contrary findings as "conclusions of law." South Fla. Water Mgmt. Dist. v. Caluwe, 459 So.2d 390 (Fla. 4th DCA 1984). "[A]n agency's reliance upon its own expertise to reverse a hearing officer's finding of no violation may not be sustained." Cohn v. Department of Prof. Reg., 477 So.2d 1039, 1047 (Fla. 3d DCA 1985) (citations omitted).
*861 The Florida Supreme Court has explained "competent substantial evidence" as follows:
Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Becker v. Merrill, 155 Fla. 379, 20 So.2d 912 [Fla.1944]; Laney v. Board of Pub. Instruction, 153 Fla. 728, 15 So.2d 748 [Fla.1943].... We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the `substantial' evidence should also be `competent.' Schwartz, American Administrative Law, p. 88; The Substantial Evidence Rule by Malcolm Parsons, Fla. Law Review, Vol. IV, No. 4, p. 481; United States Casualty Co. v. Maryland Casualty Co., Fla.1951, 55 So.2d 741; Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 [1938].
DeGroot v. Sheffield 95 So.2d 912, 916 (Fla. 1957).

Appellate Court
Section 120.68, Florida Statutes (Supp.1996), provides the parameters within which we review the School Board's action. According to the statute, we must separately address issues of agency procedure, interpretations of law, and determinations of fact. § 120.68(7), Fla. Stat. (Supp.1996). From a procedural standpoint, the inquiry is whether "the fairness of the proceedings or the correctness of the [agency] action may have been impaired by a material error in procedure or a failure to follow prescribed procedure." § 120.68(7)(c), Fla. Stat. (Supp.1996). Reversal is mandated when a procedural error is material to the fairness of the proceedings. Id.
As to Schrimsher's claims that the School Board erred in its interpretations of law and legal conclusions, this court is not bound by the School Board's legal interpretations and may set aside or modify the final order on a finding "that the [School Board] has erroneously interpreted a provision of law and that a correct interpretation compels a particular action." § 120.68(7)(d), Fla. Stat. (Supp.1996). Unlike with procedural errors, we may reverse any erroneous interpretation of law, whether or not the error rises to a level of materiality, so long as the correct interpretation compels a particular action.
Finally, the statute allows a much more limited standard of review with regard to the School Board's factual determinations. In this regard, we are prohibited from substituting our judgment for that of the agency in assessing the weight of the evidence or resolving disputed factual issues. § 120.68(10), Fla. Stat. (Supp.1996). The School Board's action may be set aside only after a determination that the agency's findings are not supported by competent substantial evidence in the record. § 120.68(10), Fla. Stat. (Supp. 1996).

Striking a Balance
As recognized in McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), review denied, 368 So.2d 1370 (Fla.1979), reviewing courts are faced with a "conundrum" in attempting to give deference to agency findings of fact supported by competent substantial evidence yet, at the same time, ascertain whether the agency accorded the same respect to the hearing officer's findings. Id. at 578. The First District resolved the conflict as follows:
Florida's APA [Administrative Procedure Act] does not require that the reviewing court ignore the hearing officer's findings to the extent they are displaced by agency findings. We are therefore free to reconcile the potentially conflicting statutory demands by adopting Universal Camera [Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)]'s standard of judicial review. The Florida APA, like the federal, makes the hearing officer's recommended order part of the record in the reviewing court. Section 120.57(1)(b); 120.68(5)(a). The hearing officer's findings are indisputably part of "the record" in *862 which the APA requires competent substantial evidence to support findings of fact on which agency action depends. Section 120.68(10). There is nothing in our APA, as there was nothing in the federal Act, which "suggests that reviewing courts should not give to the (hearing officer's) report such probative force as it intrinsically commands," notwithstanding that the agency has substituted contrary findings. 340 U.S. at 495, 71 S.Ct. at 468, 95 L.Ed. at 471.
Id. at 579. To reconcile the conflict, courts, therefore, must review the entire record, including the hearing officer's findings, in the following context:
Finding "substantial evidence," the [Universal Camera Corp.] Court held, is not done by mechanically combing the transcript for words and phrases of testimony that corroborate the Board's questioned finding, but rather by considering the whole record, including the examiner's findings. "The substantiality of evidence," [Justice] Frankfurter stated, "must take into account whatever in the record fairly detracts from its weight." 340 U.S. at 488, 71 S.Ct. at 464, 95 L.Ed. at 467.
McDonald, 346 So.2d at 578-79.
The weight which should be given to the hearing officer's findings, as opposed to the agency's substituted findings, will depend greatly upon the nature of the hearing officer's inquiry and the bases for his findings of fact. As the McDonald court stated:
In determining whether substantial evidence supports the agency's substituted findings of fact, a reviewing court will naturally accord greater probative force to the hearing officer's contrary findings when the question is simply the weight or credibility of testimony by witnesses, or when the factual issues are otherwise susceptible of ordinary methods of proof, or when concerning those facts the agency may not rightfully claim special insight....
At the other end of the scale, where the ultimate facts are increasingly matters of opinion and opinions are increasingly infused by policy considerations for which the agency has special responsibility, a reviewing court will give correspondingly less weight to the hearing officer's findings in determining the substantiality of evidence supporting the agency's substituted findings....
Thus, the substantiality of evidence supporting an agency's substituted finding of fact depends on a number of variables: how susceptible is the factual issue to resolution by credible witnesses and other evidence, how substantially the hearing officer's discarded findings are supported by such evidence, how far the factual issue tends to be one of opinion, how completely agency policy occupies a field otherwise open to different opinion.
McDonald, 346 So.2d at 579.

C. Legal Analysis
Applying McDonald and the above-mentioned authorities to the case at bar, we determine that the School Board properly rejected the hearing officer's interpretation of facts regarding Schrimsher's behavior and actions. We base this finding on our conclusion that the issue of whether Schrimsher's actions constituted misconduct or incompetence sufficient to warrant discharge is a matter of opinion "infused by policy considerations for which the agency has special responsibility." See McDonald. As such, the School Board properly substituted its interpretation for that of the hearing officer.
Schrimsher was classified as a noninstructional employee. In the absence of a statutory definition of incompetence applicable to non-instructional personnel, the hearing officer considered Schrimsher's actions in the context of the following definition of "incompetency," which is applicable to instructional personnel:
Incompetency is defined for instructional personnel in Florida Administrative Code Rule 6B-4.009(1) as the inability or lack of fitness to discharge [one]'s required duties as a result of inefficiency. Inefficiency is defined in Rule 6B-4.009(1)(a)(1) as the repeated failure to perform duties prescribed by law.
As it has the authority to do, the School Board disregarded the hearing officer's application of the statutory definition and elected *863 to apply general employment contract law, including a "reasonable man" standard, but did not formally set forth the definition in written policy. The School Board opined that application of the "reasonable man" test to charges of incompetency requires due consideration be given to instances which would reflect on Schrimsher's adherence to the duty of good conduct and loyalty, as well as the "unwritten" district policy requiring the avoidance of the appearance of impropriety. Finally, the School Board also stated:
There are various statutes, rules, and directives which help comprise the milieu of factors that pertain to the exercise of reasonable care under the circumstances herein. It is not important that there be proven that there is a specific violation of them, but rather, that they exist and must be considered by the reasonable man along with other relevant factors.
Although we are not bound by the School Board's interpretation of law, we approve of the School Board's expansive definition of incompetency for non-instructional personnel, and particularly for those in positions such as that which Schrimsher held. As an Associate Superintendent, Schrimsher enjoyed a very highly regarded position of public trust. He was responsible, albeit indirectly, for the education of the youth of the community. In this regard, it was within the School Board's discretion to establish guidelines for acceptable behavior in order to avoid even the appearance of impropriety, and to hold Schrimsher to that standard.
In that framework, the School Board concluded that Schrimsher's acceptance of gifts and vacations (dinner at Caesar's Palace in Las Vegas, Nevada and fishing trips to St. Thomas, U.S. Virgin Islands and Bimini, Bahama Islands) as well as his personal involvement with persons with whom the School Board was contracting, created a blatant and glaring appearance of impropriety and, thus, a dimension of incompetence too overwhelming for Schrimsher to remain in his position. Upon careful review of the record, we find that the School Board's conclusion is supported by competent substantial evidence, and decline to disturb it.

D. Attorney's Fees
Both parties claim that the issue of entitlement to attorney's fees should be remanded, pursuant to their unilateral, pre-trial stipulations, for an evidentiary hearing. We agree.
In spite of the parties' pre-trial stipulations to hold an evidentiary hearing on the issue of attorney's fees after the hearing on the substantive issues relating to Schrimsher's dismissal, the hearing officer in his recommended order summarily denied Schrimsher's motion for attorney's fees, but did not address the School Board's motion. Thereafter, in its final order, the School Board found that the hearing officer had incorrectly failed to consider its claim for fees, and remanded the matter to the hearing officer for an evidentiary hearing to determine its entitlement to fees under rule 1.380(c), Florida Rules of Civil Procedure. On remand, the hearing officer denied the School Board's motion for fees.
Schrimsher appeals the hearing officer's summary denial of his claim for fees, and the School Board cross appeals from the hearing officer's order on remand denying its claim for fees.
The hearing officer is bound by the parties' stipulations, and should have held a separate hearing especially where the issues of entitlement to attorney's fees on grounds asserted by the parties are sufficiently distinct from the issues addressed during the administrative proceedings. We find the parties' arguments on appeal persuasive, and remand for an evidentiary hearing limited only to determining the parties' entitlement, if any, to fees.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
STONE, J., concurs specially with opinion.
SORONDO, RODOLFO, Jr., Associate Judge, concurs in part and dissents in part.
STONE, Judge, concurring specially.
Section 231.36(4)(c), Florida Statutes, provides that disciplinary action may be taken against those in Schrimsher's position for: "immorality, misconduct in office, incompetency, *864 gross insubordination, willful neglect of duty, drunkenness, or conviction of a crime involving moral turpitude."
The School Board properly rejected the hearing officer's application of the law as based on too narrow a definition of incompetency considering Schrimsher's position of significant responsibility. The standard applied by the hearing officer (ability to discharge a duty) is more appropriately applied to the discharge of teachers. Judge Shahood's opinion correctly recognizes the authority of the School Board to apply a reasonable man standard in evaluating the conduct of one of their most senior officials. The record is clear that the hearing officer declined to apply this standard and applied a standard (for determining incompetency) that requires proof of repeated failure to perform duties prescribed by law. As there is no specified applicable standard for evaluating incompetency or misconduct by high level administration executives in the rules or statutes, it is properly within the School Board's policy prerogative to take issue with the standard applied by the hearing officer.
Here, Schrimsher was in the key position of assisting in administering, and providing leadership for, a $678 million dollar, five-year construction program funded by a major bond issue, as well as being responsible for supervising and planning for site acquisition for new construction, growth management, maintenance and renovations, and personnel and facility administration. In the system hierarchy, Schrimsher made recommendations directly to the School Board and reported directly to the superintendent; below him were three assistant superintendents, and subordinate to them were numerous directors, assistant directors, managers, etc.
As noted, this affirmance is not inconsistent with the well-established principle that deference must be shown to the hearing officer's fact findings, which may not be rejected if supported by competent evidence. E.g. Greseth v. Department of Health and Rehabilitative Servs., 573 So.2d 1004 (Fla. 4th DCA 1991); Heifetz v. Department of Business Regulation, Div. of Alcoholic Beverages and Tobacco, 475 So.2d 1277, 1281-82 (Fla. 1st DCA 1985). The School Board could conclude on this record that many of the officer's fact findings were not supported and were simply opinions or conclusions. The School Board considered the totality of thousands of pages of record and thousands of pages of transcript in concluding that the report was not supported by competent substantial evidence. In doing so, the School Board did an exhaustive study of the record which includes much unimpeached evidence, the significance of which, it concluded, was inexplicably ignored or overlooked by the hearing officer.
I note that as to many of the allegations, it was Schrimsher's position that blame for what occurred should be placed elsewhere: as to some, with the School Board; as to some, the "system;" as to some, his boss; and as to some, the lower level employees or others. However, even if fault should be shared for the various actions or failures to act, there is no reason why the School Board may not hold one in Schrimsher's position accountable, after taking the evidence most favorably to him, for a lack of competence. The issue before the School Board was not whether Schrimsher had excuses for what had occurred, but whether the circumstances (his acts or failures to act in context) constitute a sufficiently good reason, as a matter of law or public policy, to transfer him. See MacPherson v. School Bd. of Monroe County, 505 So.2d 682 (Fla. 3d DCA 1987); Jacker v. School Bd. of Dade County, 426 So.2d 1149 (Fla. 3d DCA 1983).
Although the hearing officer could conclude that the School Board had not proved a violation of any law or rule, and although Schrimsher may have given credible explanations for much of what had occurred, at the very least it is clear that the School Board proved, to varying degrees, an appearance of impropriety, poor communications, seriously deficient procedures, a breakdown of authority and responsibility, poor planning, deficient administration, inadequate control, a lack of responsible supervision, and acceptance of inadequate or inefficient internal procedures and organization in the department he oversaw. "Competence", in this context, is not necessarily a lack of ability. Rather, it may be found in a myriad of acts or failures to act *865 in a given context. To hold otherwise gives carte blanche to highest level management to escape accountability. Further, by any interpretation of this record, the appearance of impropriety cannot be negated. In my judgment, this appearance alone is sufficient to constitute incompetence by one in Schrimsher's important position in the system, notwithstanding that his transfer was based solely on "incompetence" rather than "impropriety."
The School Board order is over 200 pages long, including an appended analysis of the hearing officer's findings, and is based on an obvious exhaustive review. It is significant that the School Board did not simply reject outright the officer's findings. Rather, the School Board waded through the report and rejected by specific reference to undisputed facts and circumstances demonstrating that: Schrimsher accepted substantial and numerous gifts and gratuities from persons and businesses doing business with departments or persons that he was in a position to influence; he was aware, through a Price Waterhouse study of his division, of substantial deficiencies in areas under his responsibility; he chose to ignore the study although he had the opportunity and authority to take action to improve the management of his division; he expressed displeasure with the study report and ordered that the accounting firm's services be terminated; Schrimsher's involvement with certain questioned land purchase decisions was more extensive than he claimed; there was unacceptable application of funds; and more. The School Board was also concerned that the hearing officer mixed fact with opinion in rejecting, without apparent explanation, testimony and documentary evidence given by the School Board's own employees. In the face of the foregoing, the School Board could consider it irrelevant that there was also substantial competent evidence as to various positive considerations favoring Schrimsher.
There is also no merit to Schrimsher's objection on appeal to the introduction of evidence indicating misconduct when the charge is one of incompetence. Schrimsher had notice of the School Board's complaints and, in any event, the evidence in question is equally probative of either charge.
With regard to attorney's fees, I would affirm the denial of fees to Schrimsher and remand only for reconsideration of the School Board's claims to fees imposed as a sanction for discovery violations.
SORONDO, RODOLFO, Jr., Associate Judge, concurring in part and dissenting in part.
I respectfully dissent. The majority opinion begins by noting that
an administrative agency may not reject a hearing officer's findings unless it first determines that the findings were not based on competent, substantial evidence, or that the proceedings in which the findings were based did not comply with the essential requirements of law from which the findings could reasonably be inferred. Citing Greseth v. Department of Health and Rehabilitative Servs., 573 So.2d 1004 (Fla. 4th DCA 1991) and § 120.57(1)(b)10, Fla. Stat. (1993).
(Emphasis added).
I agree that this is a proper statement of the law. I do not agree that the proper application of this standard can result in anything other than a reversal of the School Board's action herein.
In November of 1992, the hearing officer convened the formal administrative hearing in this case. During this hearing the parties called thirty-three witnesses to testify and introduced approximately 180 exhibits. Having seen the evidence and heard the arguments of counsel, the hearing officer entered a sixty-eight page order detailing his factual findings and conclusions in 164 individually numbered and detailed paragraphs.
The School Board filed exceptions to the hearing officer's recommended order saying, inter alia, that the order was "legally deficient on the most cursory analysis" and that the hearing officer was not "sufficiently impartial."
Having reviewed the record in this case, it is clear to me that the School Board's rejection of the hearing officer's findings and conclusions represents nothing more than its *866 expressed disagreement with those conclusions. The fact that the School Board does not agree with those findings, or that those findings do not allow for the School Board's desired result, however, does not justify their rejection. Heifetz v. Department of Bus. Reg. Div. of Alcoholic Beverages and Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985).
The quantum of evidence presented at the administrative hearing in this case is far more than sufficient to establish the legal requirement of "competent, substantial evidence" explained in Greseth, supra, and its progeny. The hearing officer, serving as the fact-finder in this proceeding, heard the testimony and was in the best position to assess the credibility of witnesses and determine the result warranted by the weight of the evidence. Neither the School Board, nor this court, is in a position to second guess those factual findings on the basis of a cold and sterile appellate record. In my view, there is no legal basis for rejecting the hearing officer's findings.
As concerns the School Board's suggestion that the hearing officer was not "sufficiently impartial," I can find nothing in this record that substantiates this accusation. The fact that the accusation was made, however, is supportive of my conclusion that the School Board was simply unhappy with the result.
In his concurring opinion Judge Stone writes:
Although the hearing officer could conclude that the board had not proved a violation of any law or rule, and although Appellant may have given credible explanations for much of what occurred, at the very least it is clear that the board proved, to varying degrees, an appearance of impropriety, poor communications, seriously deficient procedures, a breakdown of authority and responsibility, poor planning, deficient administration, inadequate control, a lack of responsible supervision, and acceptance of inadequate or inefficient internal procedures and organization in the department he oversaw.
(Emphasis added).
If the hearing officer was in a position to legitimately conclude that the board had failed to prove a violation of the law or rules and the Appellant gave credible explanations for much of what occurred, then the inference is inescapable that there exists in this record competent substantial evidence to support the findings and conclusions of the hearing officer.
Having recited the allegations which were originally brought against the Appellant, and obviously rejected by the hearing officer, the concurring opinion concludes by saying:
"In the face of the foregoing, the board could consider it irrelevant that there is also substantial competent evidence as to various positive considerations favoring Appellant."
I am unaware of any legal precedent for this position and I am convinced that it is contrary to the holdings of the cases cited above. I fear this statement will be used by disgruntled agencies who are displeased with the conclusions of impartial hearing officers for the purpose of imposing their own agenda. The law, as it presently exists, provides protections which the language of this opinion will greatly jeopardize.
I would reverse the School Board's Final Order and remand the case with instructions that the Recommended Order of the hearing officer be entered as the Final Order in this case. I agree with the majority opinion that on remand, an evidentiary hearing should be conducted to determine the parties' entitlement to attorney's fees and costs.