819 So.2d 997 (2002)
Howard E. GROSS, M.D., Appellant,
v.
DEPARTMENT OF HEALTH, etc., Appellee.
No. 5D01-2074.
District Court of Appeal of Florida, Fifth District.
June 28, 2002.
*999 Robert D. Henry of Ringer, Henry, Buckley & Seacord, P.A., Orlando, for Appellant.
Pamela H. Page, Senior Attorney, Agency for Health Care Administration, Tallahassee, for Appellee.
SAWAYA, J.
Howard Gross, M.D., appeals the final order of the Board of Medicine (the Board)[1] concluding that Gross deviated from the standard of care defined by section 458.331(1)(t), Florida Statutes (2000).[2] Gross asserts the Board, which is made up of several medical doctors, abused its discretion in rejecting the Administrative Law Judge's (the ALJ) recommended findings of fact because the findings were supported by substantial competent evidence and because the Board substituted its own expert opinion for that of the ALJ. We agree and reverse.

Factual And Procedural Background
In August 2000, the Department of Health (the Department) filed an administrative complaint against Gross following his injection of air, rather than ionic dye, into an eighty-four-year-old patient scheduled to receive a heart catheterization via a ventriculogram. A ventriculogram is an injection of dye into the heart for visualization of the passing of dye through its various chambers. To accomplish this, an electromechanical injector made by Medrad is used.
The injector and the personnel necessary to assist in the heart catheterization are furnished by the hospital as part of the catheterization laboratory. A written protocol was adopted by the hospital for the preparation of the Medrad injector by the catheterization personnel, including the loading of the injector with dye. In the instant case, the hospital personnel failed to follow the protocol and failed to load the injector with dye before Gross started the procedure. When the procedure advanced to the time to inject the dye, the laboratory technician presented the injector to Gross as ready for the injection. As a result, air instead of dye was injected into *1000 the patient. The injection of air resulted in the patient's death despite Gross's life-saving efforts. The Department alleged that the air injection was a failure on the part of Gross to practice medicine with the level of care, skill and treatment required by section 458.331(1)(t).
Gross elected to have a formal hearing where both parties presented evidence concerning the events leading up to the injection and expert analysis on the applicable standard of care. After hearing the evidence, the ALJ issued a recommended order that set forth findings of fact and conclusions of law. The ALJ made the following findings which the Board admits are supported by substantial competent evidence:
26. Testimony revealed that at ORMC and other hospitals it was the Cardiac Cath Lab staff's responsibility to load the MEDRAD injector without the direct supervision of physicians and that physicians are rarely in the lab when the MEDRAD injector is loaded.
27. The "standard of care" does not require the physician to watch the loading of dye or the expulsion of air from the syringe in the loading process.
The ALJ recommended the Board enter an order finding that Gross did not violate section 458.331(1)(t). The ALJ's recommended order was then submitted to the Board for adoption. At the Board's hearing, several of the board members took issue with the ALJ's finding that Gross's performance did not fall below the appropriate standard of care and did not constitute a violation of section 458.331(1)(t). Thereafter, the Board issued its final order finding that Gross's performance was below the applicable standard of care and that he did violate section 458.331(1)(t). As a penalty, the Board issued a letter of concern, levied a $5000 fine and required Gross to complete five hours of continuing medical education. Gross appeals from this order.
The issue we must resolve is whether the Board abused its discretion in rejecting the ALJ's findings of fact and substituting its findings and conclusions that Gross breached the applicable standard of care standard and the provisions of section 458.331(1)(t). In order to resolve this issue, we will discuss the standard of review that we must apply to the instant case, then follow that discussion with our legal analysis.

Standard Of Review

Agency Review of Proceedings Before An Administrative Law Judge
When substantial interests of a party are determined by an agency, the affected party is entitled to proceed in accordance with section 120.57(1), Florida Statutes, which allows for a hearing involving disputed issues of fact to be conducted by an administrative law judge, formerly referred to as a hearing officer.[3] § 120.569(1), Fla. Stat. (2001). After hearing all of the evidence, the administrative law judge shall render a recommended order consisting of findings of fact, conclusions of law, and a recommended disposition or penalty. § 120.57(1)(k), Fla. Stat. (2001).
The agency may adopt the recommended order, or the agency may reject or modify the findings of fact. § 120.57(1)(l), Fla. Stat. (2001). Findings of fact in a recommended order may not be rejected or modified unless the agency *1001 states with particularity in its final order that the findings were not based upon competent substantial evidence or that the proceedings on which the findings are based did not comply with the essential requirements of law. Id.; Greseth v. Department of Health & Rehabilitative Servs., 573 So.2d 1004 (Fla. 4th DCA 1991). When determining whether to reject or modify findings of fact in a recommended order, the agency is not permitted to weigh the evidence, judge the credibility of the witnesses, or interpret the evidence to fit its ultimate conclusions.[4] Neither may an agency's responsibility to determine if substantial evidence supports the administrative law judge's findings of fact be avoided by merely labeling, either by the administrative law judge or the agency, contrary findings as conclusions of law.[5] Moreover, an agency may not rely on its own expertise to reverse the administrative law judge's finding that a particular statute was not violated. Cohn v. Department of Prof'l. Regulation, 477 So.2d 1039 (Fla. 3d DCA 1985). In summary, if there is competent substantial evidence to support the findings of fact in the record, the Florida courts, including this court, have consistently held that the agency may not reject them, modify them, substitute its findings, or make new findings.[6]

*1002 Review By Appellate Courts

Our review of the Board's order is governed by section 120.68, Florida Statutes (2000). See Legal Envtl. Assistance Found., Inc. v. Clark, 668 So.2d 982 (Fla. 1996). A reviewing court may set aside agency action when it finds that the action is dependent on any finding of fact that is not supported by substantial competent evidence in the record, a material error in procedure, an incorrect interpretation of law, or an abuse of discretion. § 120.68(7), Fla. Stat. (2000). When factual findings are reviewed, the court must not substitute its judgment for that of the agency in assessing the weight of the evidence or resolving disputed issues of fact. See § 120.68(10), Fla. Stat. (2000). An agency's action may be set aside only if the findings are not supported by substantial competent evidence.
The courts have encountered difficulties when the administrative law judge's findings are supported by substantial competent evidence which are rejected or modified by the agency's adoption of its own findings which are also supported by substantial competent evidence. This court has held that in these instances, the agency's order must be reversed because it "did not follow established principles of law when it discarded findings of its hearing officer which were supported by competent substantial evidence." City of Umatilla v. Public Employees Relations Comm'n, 422 So.2d at 907. The Board argues, however, that the deference rule applies and compels a different result.

The Deference Rule
The deference rule recognizes that policy considerations left to the discretion of an agency may take precedence over findings of fact by an administrative law judge. The rule provides:
Matters that are susceptible of ordinary methods of proof, such as determining the credibility of witnesses or the weight to accord evidence, are factual matters to be determined by the hearing officer. On the other hand, matters infused with overriding policy considerations are left to agency discretion.
Baptist Hosp., Inc. v. Department of Health & Rehabilitative Servs., 500 So.2d 620, 623 (Fla. 1st DCA 1986) (citations omitted); McDonald v. Department of Banking & Fin., 346 So.2d 569 (Fla. 1st DCA 1977).
In the instant case, the Board argues that whether Gross failed to comply with the applicable standard of care is a matter infused with overriding policy considerations and it may, therefore, give less deference to the findings of fact by the ALJ. Matters infused with overriding policy considerations include instances where an agency must interpret one of its own rules, as was the case in Baptist Hospital, or where a statute confers broad discretionary authority upon the agency which depends on whether certain criteria are found by the agency to exist, as was the case in McDonald.[7]
On the other hand, "[w]here issues `are determinable by ordinary methods *1003 of proof through the weighing of evidence and the judging of the credibility of witnesses,' they are `solely the prerogative of the hearing officer as finder of fact.'" B.B. v. Department of Health & Rehabilitative Servs., 542 So.2d 1362, 1364 (Fla. 3d DCA 1989) (quoting Holmes v. Turlington, 480 So.2d 150, 153 (Fla. 1st DCA 1985)). In these instances, if the court concludes that both the administrative law judge's findings and the agency's substituted or modified findings are supported by substantial competent evidence, the findings made by the administrative law judge must prevail and the agency's order rejecting or modifying them must be reversed. See City of Umatilla; Westchester Gen. Hosp. v. Department of Health & Rehabilitative Servs., 419 So.2d 705 (Fla. 1st DCA 1982). In City of Umatilla, for example, this court held in establishing the appropriate test to apply in this circumstance:
It may be said that there is also competent substantial evidence to support the findings of the Commission, but that is not the test here. The controlling statute, section 120.57(1)(b)9, plainly proscribes the rejection of the hearing officer's findings of fact where those findings are supported by competent substantial evidence.
422 So.2d at 908 (citation omitted).
We reject the argument by the Board that the deference rule applies to the instant case because, as will be discussed seriatim, the courts have generally held that the issue of whether an individual violated a statute by breaching the applicable standard of care is a factual issue that is susceptible to ordinary methods of proof and is an issue that is not infused with policy considerations.

Analysis
Florida courts have consistently held that the issue of whether an individual violated a statute or deviated from a standard of conduct is generally an issue of fact to be determined by the administrative law judge based on the evidence and testimony.[8] Specifically, whether a doctor deviated from the applicable standard of care is an issue of fact to be determined by the administrative law judge. Hoover; Nest; Holmes; Johnston. Hence an agency may reject or alter the administrative law judge's ultimate finding of fact regarding this issue only if it was not supported by competent, substantial evidence. Hoover; Nest; Holmes; Johnston.
In the instant case, the ALJ rendered a recommended order with comprehensive and detailed findings of fact all of which the Board concedes are based upon competent substantial evidence. Specifically, the ALJ, in finding that Gross did not breach the applicable standard of care and therefore did not violate section 458.331(1)(t), *1004 made the following findings in the recommended order:
38. Petitioner's expert rendered his opinion based upon his examination of the hospital records.
39. Respondent's expert rendered his opinion based upon his examination of the following:
a. Administrative complaint with supporting documents.
b. Dr. Allen Seals' (Petitioner's expert) report and deposition.
c. Agency for Health Card Administration investigative report.
d. ORMC's Code 15 report.
e. Respondent's February 21, 1997 memo for peer review purposes.
f. Hospital records.
g. Death resume.
h. ORMC's MEDRAD policy/procedure.
i. Experimentation with a catheter and MEDRAD injector.
40. Respondent's expert testified that Respondent met the standard of care in the instant case because he practiced medicine with that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar circumstances.
41. Based on the totality of the evidence presented, the undersigned rejects the expert opinion of Dr. Allen Seals, M.D., Petitioner's expert witness, and accepts as being more credible the testimony of David P. Browne, Jr., M.D., Respondent's expert witness.
These specific findings clearly show that the ALJ weighed the testimony of each expert witness and found that the expert who testified on behalf of Gross was more credible. The Board is not permitted to reject or modify the findings made by the ALJ because it disagrees with the ALJ's findings and it may not weigh the credibility of the witnesses and draw a different conclusion.
The Board justifies its rejection of the ALJ's finding that Gross did not violate the standard of care or section 458.331(1)(t) by reliance on the deference rule. Specifically, the Board argues that its decision is infused with policy considerations and therefore entitled to deference. We disagree. This is not a case where the Board is required to exercise its broad discretionary powers in accordance with statutory criteria and it is not a case where the Board is called upon to interpret or apply one of its own rules. Rather, the instant case involves the factual issue of whether Gross violated the applicable standard of care which is an issue readily determinable through the ordinary methods of proof such as the weighing of evidence and the credibility of witnesses. Bush; Holmes. Hence it is not a case infused with policy issues and, therefore, the deference rule does not apply.
We likewise reject the Board's assertion that it is entitled to deference based on its own expertise. As the court stated in Cohn:
In the first place, it is settled Florida doctrine that the rule which ascribes effect to an agency's determination of ultimate "facts" on a subject about which it may rightfully claim expert insight, which originated in McDonald v. Department of Banking and Finance, 346 So.2d 569, 579 (Fla. 1st DCA 1977), is not applicable to disciplinary proceedings in general, and to ones like this which are based upon an alleged breach of a broad standard of conduct in particular. In such an instance, the issue of whether the licensee's conduct was indeed in violation of a statutory standard is one of fact which not only must be established by "conventional" proof, but *1005 as to which the prosecuting agency bears a significantly enhanced burden.
477 So.2d at 1046; see also Purvis v. Department of Prof'l Regulation, Bd. of Veterinary Med., 461 So.2d 134 (Fla. 1st DCA 1984); Johnston.
The Board concedes that its order does not state with particularity that the ALJ's findings are not supported by substantial competent evidence as required by section 120.57(1)(l). The Board further concedes that the findings of the ALJ in the instant case are supported by competent substantial evidence. The Board argues, however, that if this court reverses its order, this case should be remanded to allow it another opportunity to sanction Gross. We disagree. The deference rule does not apply and having conceded the ALJ's findings are supported by substantial competent evidence, the Board may not modify or reject them, substitute its findings or make new findings, re-weigh the evidence, judge the credibility of the witnesses, or interpret the evidence to fit its ultimate conclusion. Hence, there is nothing further for the Board to do except enter an order in accordance with the ALJ's recommendation.
Finally, the Board, noting that the findings that Gross did not violate the standard of care or breach section 458.331 are labeled conclusions of law in the recommended order, argues that these conclusions are contrary to a proper interpretation of the statute. The Board contends that it has the authority to properly interpret the statute and correct the legal conclusions reached by the ALJ. We disagree. The findings the Board contends are legal conclusions are findings of fact regardless of the label placed on them by either the ALJ or the Board. Moreover, we do not find that the statute is ambiguous and in need of interpretation by the Board.

Conclusion
The ALJ heard all of the evidence and testimony presented by both parties and rendered a very lengthy and detailed order containing findings of fact. Specifically, the ALJ found that Gross did not breach the applicable standard of care and did not violate section 458.331(1)(t). The Board has conceded in these proceedings that all of the findings made by the ALJ, including the finding that Gross did not violate the applicable standard of care or violate section 458.331(1)(t), are supported by substantial, competent evidence. Therefore, the Board may not reject or modify those findings, substitute its findings, or make new findings. Moreover, because the issues addressed by the ALJ and the Board are not infused with overriding policy considerations that would allow the Board to give less deference to the ALJ's findings, the deference rule is inapplicable to the instant case. Accordingly, we reverse the order rendered by the Board and remand this case for entry of an order approving the order rendered by the ALJ.
REVERSED AND REMANDED.
PETERSON, J., concurs.
ORFINGER, R.B., J., concurs specially, with opinion.
ORFINGER, R.B., J., concurring.
"First, do no harm."[1] Those words, written by Hippocrates nearly 2,500 years *1006 ago, set forth the most fundamental precept of medicine and perhaps represent the first codification of a medical practitioner's standard of care. Unfortunately, that ancient standard appears to have no application to this matter. Although it is clear that harm was done to Dr. Gross's patient, I nevertheless must concur with the majority opinion because neither this court, nor the Board of Medicine, can disregard findings of fact made by the Administrative Law Judge (ALJ) that are supported by substantial competent evidence. Similarly, the Board of Medicine and this court are prohibited from reweighing the conflicting evidence considered by the ALJ in resolving disputed issues of fact. As the Board concedes in its brief, each of the ALJ's findings, including the finding that Dr. Gross did not deviate from the standard of care defined by section 458.331(1)(t), Florida Statutes (2000), are supported by substantial competent evidence.
The tragic events that led up to the demise of Dr. Gross's patient are not in substantial dispute. In preparation for a diagnostic ventriculogram, a nurse employed by Orlando Regional Medical Center's cardiac catheterization lab was responsible for loading an injector with dye. The injector was to be utilized to inject dye into the patient's heart to opacify the flow of blood. Apparently, the nurse was called away while preparing the injector for use and inadvertently left the plunger in a position so that it appeared that the injector had been loaded with dye as required. In fact, it had not been, and when the injector was wheeled to the patient's side, Dr. Gross connected it to the catheter that had been inserted into the patient's heart and then injected a large volume of air, rather than dye, into his patient, causing the patient's sudden death.
The evidence supports the ALJ's factual finding that the standard of care did not require Dr. Gross to be present to observe the loading of dye into, or the expulsion of air from, the injector. However, the nurse's failure to load the injector with dye is not what caused the death of Dr. Gross's patient. The patient died because Dr. Gross, not the nurse, injected air, rather than dye, into the patient's heart causing an immediate and fatal air embolus. Certainly, the nurse played a significant part in this tragedy, but Dr. Gross's failure to ensure that the injector was properly loaded prior to utilizing it, was the direct cause of his patient's death.
The requirement that we use reasonable care in our daily endeavors is not unique to medicine. Indeed, the standard of care that society requires of us increases in direct proportion to the risk inherent in the activity being performed. Everyday life gives us many analogous situations. The pilot of a commercial airliner is not obliged to personally fill the fuel tanks of the airplane; however, the traveling public reasonably expects the pilot to check the fuel gauges prior to takeoff to ensure that the plane has adequate fuel. Similarly, prudence dictates that someone holding a gun check to make sure it is not loaded, before pointing it toward someone and pulling the trigger. Likewise, I believe the standard of care should require Dr. Gross, and other physicians performing similar procedures, to ensure that the injector is properly filled with dye so that air is not injected into the patient, particularly given the significant adverse consequences of doing so. Such a standard seems to be no more than common sense. However, at least as it relates to the protocols for injecting dye into patients, the medical profession appears not to have set the bar very high.
Common sense notwithstanding, the ALJ was presented with conflicting evidence regarding Dr. Gross's obligation to *1007 ensure that the injector was properly loaded with dye prior to utilizing it. Although the conclusion that Dr. Gross had no such responsibility defies common sense, legally, the ALJ was free to accept the testimony of Dr. Gross and that of his expert witness, that the standard of care did not require Dr. Gross to ensure that the injector was properly loaded with dye before utilizing it. Apparently, the ALJ did not consider Hippocrates's proscription to "do no harm" as establishing a reasonable standard of care to be followed by medical practitioners in Florida or encompassed within the statutory standard found in section 458.331(1)(t).[2]
Because the law does not allow this court or the Board of Medicine to reweigh the conflicting evidence, I concur, albeit reluctantly, with the court's opinion.
NOTES
[1] The Board of Medicine is established, via section 20.43(3)(g)4., Florida Statutes (2000), as part of the Division of Medical Quality Assurance, which itself is a division of the Department of Health. § 20.43(3)(g), Fla. Stat. (2000).
[2] Section 458.331(1)(t) provides in pertinent part that a medical doctor may be subject to disciplinary actions for "the failure ... to practice medicine with that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances." § 458.331(1)(t), Fla. Stat. (2000). The applicable level of care "for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." § 766.102(1), Fla. Stat. (2000).
[3] In the past, the hearings were conducted by a "hearing officer." The term "hearing officer" was changed to "administrative law judge" in the 1996 revision of the Administrative Procedure Act. Ch. 96-159, § 3, Laws of Fla. Accordingly, the case law discussing the treatment to be afforded a hearing officer's findings is applicable to the findings of an administrative law judge.
[4] See Heifetz v. Department of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985); Morris v. Department of Prof'l Regulation, 474 So.2d 841, 844 (Fla. 5th DCA 1985) (stating that "the commission cannot substitute its interpretation of the disputed facts for those of the hearing officer, who personally heard the evidence, and was in the position to evaluate the testimony and determine credibility of the witnesses") (citing City of Umatilla v. Public Employees Relations Comm'n, 422 So.2d 905 (Fla. 5th DCA 1982), review denied, 430 So.2d 452 (Fla.1983); Kibler v. Department of Prof'l Regulation, 418 So.2d 1081 (Fla. 4th DCA 1982)).
[5] Pillsbury v. State, Dep't of Health & Rehabilitative Servs., 744 So.2d 1040 (Fla. 2d DCA 1999) ("The mere fact that what is essentially a factual determination is labeled a conclusion of law, whether labeled by the hearing officer or the agency, does not make it so, and the obligation of the agency to honor the hearing officer's findings of fact cannot be avoided by categorizing a contrary finding as a conclusion of law.") (citation omitted); Greseth; National Indus., Inc. v. Commission on Human Relations, 527 So.2d 894 (Fla. 5th DCA 1988); Kinney, 501 So.2d at 132 ("Erroneously labeling what is essentially a factual determination a `conclusion of law,' whether by the hearing officer or the agency does not make it so, and the obligation of the agency to honor the hearing officer's findings of fact may not be avoided by categorizing a contrary finding as a `conclusion of law.'").
[6] Pillsbury, 744 So.2d at 1041; Fonte v. State, Dep't of Envtl. Regulation, 634 So.2d 663 (Fla. 2d DCA 1994) (noting that an agency may only reject a hearing officer's findings of fact if it determines from a review of the complete record that the findings were not based upon competent, substantial evidence); Orlando Gen. Hosp. v. Department of Health & Rehabilitative Servs., 567 So.2d 962 (Fla. 5th DCA 1990); Kinney v. Department of State, Div. of Licensing, 501 So.2d 129, 132 (Fla. 5th DCA 1987) ("Although an agency may reject or modify the conclusions of law and interpretation of administrative rules of the hearing officer, it may not reject or modify findings of fact where those findings of fact are based on competent substantial evidence.") (citing section 120.57(1)(b)(9), Florida Statutes (1985); Morris v. Department of Prof'l Regulation, 474 So.2d 841 (Fla. 5th DCA 1985); Clark v. Department of Prof'l Regulation, Bd. of Med. Exam'rs, 463 So.2d 328 (Fla. 5th DCA), rev. denied, 475 So.2d 693 (1985)); Ferris v. Austin, 487 So.2d 1163, 1167 (Fla. 5th DCA 1986) ("The agency may not reject the hearing officer's findings unless there is no competent, substantial evidence from which the finding could reasonably be inferred.") (citing Heifetz v. Department of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985)); Brevard County Sheriff's Dep't v. Florida Comm'n on Human Relations, 429 So.2d 1235, 1237 (Fla. 5th DCA 1983) ("What the Commission has done, in effect, is ignored or rejected the hearing officer's findings of fact without determining that they are not supported by competent, substantial evidence. This it cannot do.") (citations omitted).
[7] See Orlando Gen. Hosp., 567 So.2d at 965 (explaining that in Baptist Hospital, the agency, in applying the deference rule, "exercised its discretionary authority to interpret its own rules"). In McDonald, the court applied the deference rule to the agency's application of section 659.03 Florida Statutes (1975), which required the agency (Department of Banking and Finance) to investigate an applicant's qualifications and "`not approve such application until, in its opinion'" certain statutory criteria are met. McDonald, 346 So.2d at 574 (quoting section 659.03, Florida Statutes (1975)) (emphasis supplied). The court held that this statute conferred broad discretionary power on the agency regarding matters infused with overriding policy considerations.
[8] Hoover v. Agency for Health Care Admin., 676 So.2d 1380 (Fla. 3d DCA 1996); Nest v. Department of Prof'l Regulation, Bd. of Med. Exam'rs, 490 So.2d 987 (Fla. 1st DCA 1986); Holmes; Johnston v. Department of Prof'l Regulation, Bd. of Med. Exam'rs, 456 So.2d 939 (Fla. 1st DCA 1984); see also Bush v. Brogan, 725 So.2d 1237 (Fla. 2d DCA 1999) (holding that whether a teacher engaged in acts of gross immorality in violation of a statute is an issue of fact and the administrative law judge's determination that the teacher did not could not be rejected by the Education Practices Commission if the findings were supported by substantial competent evidence); Goin v. Commission on Ethics, 658 So.2d 1131 (Fla. 1st DCA 1995) (holding that whether facts, as found in recommended order of hearing officer, violate a rule or statute is a question of ultimate fact which an agency may not reject if supported by substantial competent evidence); Langston v. Jamerson, 653 So.2d 489, 491 (Fla. 1st DCA 1995) ("The question whether the facts, as found in the recommended order and adopted by the EPVC, constituted violations of these rules, was a question of ultimate fact which the agency erred in rejecting without adequate explanation.").
[1] See Familiar Medical Quotations 165 (Maurice B. Strauss ed., Little Brown & Co.1968) ("As to diseases, make a habit of two things to help, or at least to do no harm."); see also Hippocrates: Ancient Medicine, Airs, Waters, Places, Epidemics 1-2, Oath, Precepts, Nutriment, Volume 1 (Loeb Classical Library) (W.H.S. Jones trs., Harvard University Press 1992) (1923); Margaret R. O'Leary, M.D., Lexikon: The Dictionary of Health Care Terms, Organizations, and Acronyms for the Era of Reform (Joint Commission on Accreditation of Healthcare Organizations 1994).
[2] Very few, if any, medical procedures are risk free. There is a clear distinction between a bad outcome and bad medicine. Not every patient can be helped and not every procedure, even if done correctly, can avoid doing harm to the patient. However, this patient's death was not the result of a poor outcome following a correctly done procedure. Rather, this patient died as a direct result of an incorrectly done procedure-bad medicine even a layman can understand.