MORRIS, Judge.
Bridlewood Group Home appeals a final order of the Agency for Persons with Disabilities (APD) revoking Bridlewood’s license to operate. The APD sought revocation after a Bridlewood employee sexually battered a patient. The administrative law judge (ALJ) recommended that no action be taken against Bridlewood because the allegations concerning negligent supervision were not proven. However, the APD filed exceptions to the ALJ’s recommended order (RO) and, thereafter, adopted one of the exceptions, finding that the revocation was warranted.[1] On appeal, Bridlewood argues that the APD improperly rejected the ALJ’s findings and substituted them with its own. We agree and hereby reverse the APD’s decision.
I. Background
Licensed by the APD since at least 2006, Bridlewood was a small group home for *655 adults with developmental disabilities. It was owned and operated by Ms. Novelette Tomlinson, a registered nurse.
In July 2010, Laseelle Saunders, a Bri-dlewood employee, sexually battered L.W., a Bridlewood resident. After the battery, L.W. contacted Tomlinson and told her what had happened. Tomlinson contacted Saunders and asked him to step outside the facility.[2] As soon as Saunders stepped outside of the facility, Tomlinson instructed L.W. to close and lock the door; Tom-linson also instructed Saunders not to reenter the facility. Immediately thereafter, Tomlinson contacted law enforcement, an APD representative, the Department of Children and Families hotline, and L.W.’s waiver support coordinator. Tomlinson arrived at the facility at the same time as law enforcement. It is undisputed that Tomlinson told law enforcement that L.W. would try to make incidents “bigger than they actually were” and would “dress in a provocative manner.” However, Tomlin-son did accompany L.W. to the hospital and to a crisis center thereafter. Although Tomlinson did not let Saunders return to the facility and, in fact, fired him the next day, she discouraged L.W. from pressing criminal charges against Saunders, instead instructing L.W. to tell law enforcement that she wanted to “forget” Saunders and to “forgive” him. As a result, Saunders was not criminally prosecuted despite the fact that he admitted that the incident occurred.
In October 2011, the APD issued an administrative complaint against Bridle-wood, alleging that Bridlewood was responsible for the sexual battery because Saunders was acting in the course and scope of his employment at the time of the sexual battery. Bridlewood responded to the complaint and disputed the material facts. After the administrative hearing, the ALJ issued his RO, finding that the APD failed to present evidence of any failure by Bridlewood to screen, train, or supervise Saunders and that the APD failed to present evidence of any action involving Saunders that Tomlinson and Bridlewood took that should not have been taken.
The APD filed exceptions to the RO, and ultimately, it entered a final order rejecting the ALJ’s findings and revoking Bri-dlewood’s license. In doing so, the APD held that the ALJ lacked the expertise to evaluate the credibility of a witness, like L.W., with a developmental disability whereas the APD had “special expertise and experience in reviewing such situations and determining whether such a situation remains a safe one for someone with a developmental disability.” The APD also held that
the questions regarding the weight to assign to L.W.’s statements in light of her developmental disability and whether [Bridlewood] continued to be a safe environment for its residents, and whether therefore [Bridlewood] should continue to be licensed, is a policy-infused opinion on a matter squarely and exclusively within the authority assigned to APD.
In finding that revocation of Bridlewood’s license was appropriate, the APD held that the facility was no longer safe for its residents based on the sexual battery incident.
II. Analysis
Generally, an appellate court will uphold an agency decision if it is supported by competent, substantial evidence. See *656 Jerry Ulm Dodge, Inc. v. Chrysler Grp. LLC, 78 So.3d 20, 23 (Fla. 1st DCA 2011) (citation omitted). However, no such deference is given to an agency’s erroneous conclusion of law. See id.; M.H. v. Dep’t of Children & Family Servs., 977 So.2d 755, 759 (Fla. 2d DCA 2008).
Because license revocation proceedings are penal in nature, the APD was required to prove its allegations by clear and convincing evidence. See Dep’t of Banking & Fin., Div. of Sec. & Investor Prot. v. Osborne Stem & Co., 670 So.2d 932, 933 (Fla.1996); Pic N’ Save Cent. Fla., Inc. v. Dep’t of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco, 601 So.2d 245, 249 (Fla. 1st DCA 1992); Agency for Pers. with Disabilities v. Help is on the Way, Inc., Case No. 11-1620 (Fla. DOAH Feb. 3, 2012; Fla. APD Apr. 16, 2012); Agency for Pers. with Disabilities v. Amanda & Co., Inc. d/b/a Loving Hearts Grp. Home, Case No. 08-1812 (Fla. DOAH Oct. 29, 2008; Fla. APD Feb. 3, 2009). In such proceedings, “the licensing body cannot rely solely on wrongdoing or negligence committed by an employee of the licensee; instead, the licensing body must prove that the licensee was at fault somehow for the employee’s conduct, due to the licensee’s own negligence, intentional wrongdoing, or lack of due diligence.” Help is on the Way, Inc., Case No. 11-1620, at 28.
The APD’s administrative complaint was predicated upon violations of sections 393.0673(l)(b), 393.13(3)(a) and (3)(g), Florida Statutes (2010), and Florida Administrative Code Rules 65G-2.012(6)(a) and (15)(b). These statutes and rules provide, generally, that (1) persons with developmental disabilities have the right to be free from abuse (including unnecessary restraint, isolation, or excessive medication), neglect, and exploitation; (2) a licensee is subject to disciplinary action if they are responsible for the abuse, neglect, or exploitation of a vulnerable adult; (3) facilities shall take reasonable precautions to protect their clients from injurious behavior; and (4) facilities shall be equipped to assure safe care and supervision for their clients. See §§ 393.0673(l)(b), 393.13(3)(a) & (3)(g); Fla. Admin. Code R. 65G-2.012(6)(a) & (15)(b). The only allegation specifically tying Bridlewood to the sexual battery was that Saunders committed the sexual battery while “acting in the course of his employment.” There was no specific allegation that Tomlinson was negligent, lacked due diligence, or engaged in intentional misconduct in handling the incident.
In the RO, the ALJ found that the APD presented no evidence that Bridlewood failed to screen, train, or supervise Saunders. The APD also failed to present evidence of any action that Bridlewood took that should not have been taken or evidence of any action involving Saunders’ hiring, training, or supervision that Bridle-wood failed to take that should have been taken. In other words, the ALJ determined that there was no evidence that Bridlewood, the licensee, was somehow responsible for the sexual battery committed by one of its employees nor was there evidence presented that Bridlewood was not equipped to assure the safe care of its clients.
But in the final order, the APD did not even address these findings as they related to Bridlewood’s conduct leading up to the incident.[3] Instead, the APD relied *657 on its exceptions to the RO, wherein it alleged that the ALJ “improperly rejected uncontroverted material facts” relating to Tomlinson’s post-incident attempt to influence L.W. in the presentation of her testimony and Tomlinson’s attempt to discredit L.W. when speaking about her to law enforcement. It was on that basis that the APD determined that the “ALJ simply lacks the expertise to determine the credibility of a witness with a developmental disability when such witness’s credibility is called into question by another person with a close personal relationship with the witness” and that it was the APD which had “special expertise and experience” to review such situations.
These findings by the APD indicate that it failed to abide by the standard of review required when an agency reviews an ALJ’s RO. “Factual issues susceptible of ordinary methods of proof that are not infused with policy considerations are the prerogative of the hearing officer as the finder of fact.” Heifetz v. Dep’t of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985) (citing McDonald v. Dep’t of Banking & Fin., 346 So.2d 569 (Fla. 1st DCA 1977)). This includes consideration of the evidence presented, resolution of conflicts in the evidence, judging credibility of the witnesses, drawing permissible inferences from the evidence, and reaching “ultimate flnding[s] of fact based on competent, substantial evidence.” Id. (citing State Beverage Dep’t v. Ernal, Inc., 115 So.2d 566 (Fla. Bd DCA 1959)). An “agency may not reject the [ALJ’s] findings unless there is no competent, substantial evidence from- which the finding could reasonably be inferred. The agency is not authorized to weigh the evidence presented, judge credibility of witnesses, or otherwise interpret the evidence to fit its desired ultimate conclusion.” Id[4] (emphasis added). “If there is competent,] substantial evidence in the record to support the ALJ’s findings of fact, the agency may not reject them, modify them, substitute its findings, or make new findings.” Rogers v. Dep’t of Health, 920 So.2d 27, 30 (Fla. 1st DCA 2005) (citations omitted).
Here, the APD determined that “the type of evidence rejected by the ALJ is not susceptible to ordinary methods of proof’ because “the questions regarding the weight to assign to L.W.’s statements in light of her developmental disability[,]” and thus the issue of whether Bridlewood “continued to be a safe environment for its residents,” were “policy-infused opiriion[s] on a matter squarely and exclusively within” the APD’s authority. We are not persuaded by the APD’s argument that because the APD is exclusively charged with preventing exploitation of the developmentally disabled and because undue influence is a form of exploitation, the APD has a superior capacity to make a credibility determination of a developmentally disabled individual when undue influence has been suggested. The APD simply provided no support for the broad assertion that it was more qualified to determine the credibility of a developmentally disabled individual, and we have found no authority holding that an agency can make a credibility de *658 termination based on the characteristics of the witness. If there were such an exception, the permutations of human characteristics would no doubt be endless and the case law addressing them would be voluminous. We conclude that the APD’s findings merely reflect a disagreement with the ALJ’s assessment of the evidence, not a finding on a factual matter infused with policy considerations. Such a disagreement cannot form the basis to reverse an ALJ’s factual determinations. See Heifetz, 475 So.2d at 1281.
Furthermore, the APD’s order did not focus on anything that Bridlewood (through Tomlinson) did leading up to the sexual battery. Rather, the APD focused on Tomlinson’s post-incident conduct. But that conduct was not the basis for the administrative complaint, and the APD cannot impose discipline for violations not charged. See Cottrill v. Dep’t of Ins., 685 So.2d 1371, 1372 (Fla. 1st DCA 1996) (holding that where administrative complaint contained references to statutory provisions but failed to allege any act or omission in violation of those provisions, the complaint did not afford proper notice to the licensee and that therefore, disciplinary action could not be predicated on those statutes).
The APD’s final order was predicated on its own credibility determination and resulted in new factual findings relating to Bridlewood’s post-incident conduct. This constitutes reversible error, see Heifetz, 475 So.2d at 1282; Rogers, 920 So.2d at 31, and we reject any argument that the APD was justified in its action because it was merely rejecting or modifying a conclusion of law,[5] see Pillsbury v. State, Dep’t of Health & Rehabilitative Servs., 744 So.2d 1040, 1041 (Fla. 2d DCA 1999) (holding that the mere fact that a factual determination is labeled a conclusion of law does not make it so and that an agency cannot avoid its obligation to honor an ALJ’s findings of fact by attempting to categorize them as such).[6] We therefore reverse the final order revoking Bridlewood’s license and remand with instructions for the APD to dismiss the complaint against Bridle-wood.
Reversed and remanded with instructions.
VILLANTI and BLACK, JJ., Concur.

. Section 120.57(l)(k), Florida Statutes (2010), provides that parties can file exceptions to a RO. While an agency can accept the findings set forth in exceptions, it must state with particularity that the ALJ's findings, relevant to the exceptions in question, are not supported by competent, substantial evidence. See Verleni v. Dep’t of Health, Bel. of Podiatric Med., 853 So.2d 481, 483 (Fla. 1st DCA 2003).

. Tomlinson was out of town at the time of the incident, and it is unclear from the record whether Tomlinson asked Saunders to wait for her to arrive or to wait until another employee arrived.

. We note that the issues of "negligent supervision and lack of diligence are essentially ultimate findings of fact clearly within the realm of [an ALJ’s] fact-finding discretion" and which are "determinable by ordinary methods of proof, weighing the evidenced] and judging the credibility of witnesses.” See Heifetz v. Dep't of Bus. Regulation, Div. of *657 Alcoholic Beverages & Tobacco, 475, So.2d 1277, 1282 (Fla. 1st DCA 1985); see also Dunham v. Highlands Cnty. Sch. Bd., 652 So.2d 894, 896 (Fla. 2d DCA 1995) (holding that the issue of whether a party willfully neglected a duty was a simple question of fact determinable by ordinary methods of proof and it was not a question infused with policy considerations).

. See also § 120.57(1)(Z), Fla. Stat. (2012); Rogers v. Dep’t of Health, 920 So.2d 27, 30 (Fla. 1st DCA 2005); Gross v. Dep't of Health, 819 So.2d 997, 1000-01 (Fla. 5th DCA 2002).

. See § 120.57(1)(Z) (providing that agencies may reject or modify conclusions of law over which they have substantive jurisdiction).

. Although the APD did not, in its final order, explicitly state that it was rejecting a conclusion of law rather than a finding of fact, the APD’s second exception to the RO, on which the license revocation was based, provided that the ‘‘[AU]’s failure to recognize these material and uncontroverted facts is an error of law.” The final order summarily provides that "[t]he findings of [fjact and [conclusions of [l]aw in the [RO] are adopted as modified herein.”